IN RE the MARRIAGE OF:

Arlene ARNOLD, Petitioner-Respondent,

v.

David ARNOLD, Respondent-Appellant.†

Court of Appeals

*No. 03–1547. Submitted on briefs January 22, 2004.—Decided February 4, 2004.*

2004 WI App 62

(Also reported in 679 N.W.2d 296.)

† Petition to review denied 4-20-04.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *David Arnold*, pro se.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Andrew C. Ladd* of *Ladd, Milaeger & Rebholz, LLP* of Waukesha.

Before Anderson, P.J., Brown and Nettesheim, JJ.

¶ 1. BROWN, J. David Arnold appeals from a custody and placement order. He was awarded placement of the children 102 days per year, not the 182.5 equal placement per year as he had requested. He wants equal placement and argues that Wis. Stat.

§ 767.24(4)(a) (2001–02)[1] requires it, that recent case law saying otherwise is *wrong* or did not take into account a parent's constitutional right to equal participation in the raising of children, and that, on the facts here, there was no compelling reason to deny equal placement. We reject his arguments and affirm.

¶ 2.   David acknowledges that the court in *Keller v. Keller*, 2002 WI App 161, ¶¶ 1–2, 10, 256 Wis. 2d 401, 647 N.W.2d 426, reversed a trial court's determination construing Wis. Stat. § 767.24(4)(a) to give equal placement to both parents unless the best interests of the child indicated otherwise. We held that while there is a statutory presumption of legal custody, there is no provision establishing a presumption of joint placement. *Keller*, 256 Wis. 2d 401, ¶¶ 12–13. We construed § 767.24(4)(a) to say that while the family court must provide placement to be regularly recurring and meaningful, this is not tantamount to a presumption of equal placement. *Keller*, 256 Wis. 2d 401, ¶ 12.

¶ 3.   David asserts that *Keller* is wrong. He notes that Wis. Stat. § 767.24(4)(a)2 says that the court shall set a placement schedule which *maximizes* the amount of time the child may spend with each parent taking into account geographic separation and accommodations for different households. He looks to a dictionary definition of "maximize," which defines the word as "greatest quantity or degree." He claims that the statute is a legislative determination that the best interests of

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

the child will be presumed to have been met when there is equal placement. He argues that *Keller* vetoes the statute.[2]

¶ 4.  The Wisconsin Court of Appeals is not at liberty to overrule its own published decisions. *Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997). We are therefore bound by *Keller*.

¶ 5.  Possibly in anticipation that we are bound by *Keller* as far as it relates to statutory interpretation, David argues that the *Keller* court did not consider the constitutional ramifications of its decision and implicitly argues that we are free to reconsider the issue in light of constitutional claims. We agree that we may do so since it was not an issue addressed in *Keller*.

¶ 6.  The gist of David's argument is that, assuming *Keller* correctly interpreted the statute, the statute is unconstitutional because it violates the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution. He claims that the physical placement statutes violate due process because they deprive him of a fundamental liberty interest in equally participating in the raising of his children. According to David, this violates substantive due process.

---

[2] The day before we released this opinion, another court of appeals panel released *Lofthus v. Lofthus*, 2004 WI App 65, 270 Wis. 2d 515, 678 N.W.2d 393. *Lofthus* addresses similar issues and reaches a similar result. Both opinions are ordered published because while the appellants in the two cases challenge the same statute, they do so on different theories. We address only the arguments Arnold raises, while the *Lofthus* court addressed only those arguments raised by the parties in that case.

¶ 7. Substantive due process protects fundamental rights and "bars, among other things, certain arbitrary government actions, regardless of the fairness of the procedures used to implement them." *State v. Radke*, 2002 WI App 146, ¶ 6, 256 Wis. 2d 448, 647 N.W. 2d 873, *aff'd*, 2003 WI 7, 259 Wis. 2d 13, 657 N.W. 2d 66. A statute that does not infringe a fundamental right will generally be constitutional if it is rationally related to a legitimate government interest. *Id.*, ¶ 7.

¶ 8. David relies upon *Troxel v. Granville*, 530 U.S. 57 (2000), to argue that he has this fundamental right to equal placement periods with his children. *Troxel* involved a statute providing paternal grandparents a right to child visitation that the United States Supreme Court held violated the mother's rights to raise her children. *Id.* at 68–75. In doing so, the Court reaffirmed that the liberties protected by the due process clause include "the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Id.* at 66.

¶ 9. David asks us to declare that the Wisconsin physical placement statutes are unconstitutional under this broad principal. David has a heavy burden ahead of him. Pursuant to *State v. Lindsey*, 203 Wis. 2d 423, 432, 554 N.W.2d 215 (Ct. App. 1996), our standard of review is as such:

> A statute is presumed to be constitutional and will be held unconstitutional only if it appears so beyond a reasonable doubt. The burden of establishing the unconstitutionality of a statute is on the person attacking it, who must overcome the strong presumption in favor of its validity. (Citations omitted.)

¶ 10. With our standard of review in place, we hold that David has not met his heavy burden. First, the facts of this case are distinguishable from those in *Troxel*. A dispute between a parent and grandparents represents a far different dynamic than the dispute between two natural parents with equal rights after a divorce. The grandparents in *Troxel* simply did not have a fundamental right to the care and custody of the children as do the parents here. So, when the *Troxel* court was speaking of fundamental rights in the raising of children, it was speaking to the existing disparity between natural parents and grandparents.

¶ 11. Second, insofar as disputes between natural parents are concerned, while parents do have a natural right to care and custody of their children,[3] this does not mean that parents have a "fundamental right" to "equal placement periods" after divorce. David has not demonstrated why, following a divorce between parents, the state does not have the right to arbitrate any dispute those parents may have over what happens to their children. *See LeClair v. LeClair*, 624 A.2d 1350, 1357 (N.H. 1993) ("The legislature contemplated the need to have ... heightened judicial control over divorced families because of unique problems that exist in a home that is split by divorce."). We conclude that David has not met his heavy burden to show why the state should be foreclosed from allowing its courts to set placement schedules commensurate with the best interests of the children even if it means less than equal placement. His substantive due process argument fails.

[3] *See Barstad v. Frazier*, 118 Wis. 2d 549, 556–57, 348 N.W.2d 479 (1984).

711

¶ 12.   The substantive due process discussion provides us with a nice transition to David's final argument on appeal that the family court misused its discretion when it did not give him the equal placement he demanded. We must remember that Wisconsin has given its courts the *responsibility* to arbitrate disputes involving custody and arrive at a solution which, in the courts exercise of discretion, is in the children's best interests. This is exactly what the family court did in this instance. The family court began its decision by acknowledging:   "I see two parents who are absolutely, totally in love with their children, as it should be, and absolutely want to do the best that they can for those children." But the court noted the "hate" the parties had for each other and opined that the underlying animosity "totally clouds their decision-making process in regards to their children." The court said it was laden with the responsibility of determining the "fitness of each of the parents ... in terms of placement." While the court wished it could fashion a schedule that would avoid the parents from interacting with each other and from exposing the "hate, the animosity and the anger apparent, which is just going to ... sour ... [or] rub off on the children," it was wishful thinking. The court said the possibility of the parents working together just was not going to happen.

¶ 13.   Then, the court pointed out specific situations where the parents' animosity toward each other poisoned the atmosphere. The court noted that the children attend private religious schools. The court was truly pained by the idea that it had to limit one parent's involvement in these religious-academic activities, but found that Arlene Arnold was better able to put aside that hate and work in the children's best interests than

David. The court specifically found that David's inability to put it aside affected his parental decision-making skills. The court likened David's problem in this regard to "extreme emotional baggage." The court therefore concluded that under the circumstances, one parent had to make these decisions. The court found that David's "difficulty in dealing with the educational persons, the daycare people [and] the school people," led to the conclusion that the one person chosen to make the key decisions be Arlene. The family court thus fashioned a parental placement schedule that would benefit Arlene's decision-making duties. Fittingly, because these duties began with and ended with the school year, the court did order equal placement during the nonschool summer months.

■

¶ 14.   The decision of the family court represents a properly reasoned exercise of discretion based on the facts of record. David's arguments to the contrary are not availing.

*By the Court.*—Order affirmed.