[No. D053395. Fourth Dist., Div. One. June 10, 2009.]

ENRIQUE M., Plaintiff and Appellant, v.
ANGELINA V., Defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part III.B. and part III.C.

**COUNSEL**

Enrique M., in pro. per., for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

**OPINION**

**AARON, J.—**

## I.

## INTRODUCTION

Enrique M. (Enrique) and Angelina V. (Angelina) dated from 1995 to 1997. In September 1997, after their relationship had ended, Angelina gave birth to their son, X. The parties share joint legal custody of X.

In February 2008, Enrique filed an order to show cause in which he requested that X. be ordered to enroll in Marshall Middle School (Marshall) the following academic year, and that the court change X.'s last name from "V.-M." to "M.V."[1] Angelina opposed both requests. She requested that the court order that X. be enrolled in Woodland Park Middle School (Woodland Park) and that X.'s name remain X.V.-M. The trial court denied Enrique's requests.

On appeal, Enrique claims that the trial court erred in failing to apply the strict scrutiny standard in ruling on Enrique's request to order that X. attend Marshall. Enrique also claims that the trial court erred in excluding various hearsay statements made by X., which Enrique offered in support of his request that the court order that X. be enrolled in Marshall. Finally, Enrique claims that the trial court erred in denying his request to change X.'s last name. We affirm the trial court's order.[2]

## II.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

In March 1998, Enrique filed a complaint in which he sought to establish a parental relationship with X., and requested child custody and visitation. In

---

[1] At the hearing on his order to show cause, Enrique clarified that X. currently has a hyphenated last name, "V.[mother's last name]-M.[father's last name]." Enrique requested that the hyphen be removed and that the order of the parents' last names be reversed so that X.'s last name would be, "M.[father's last name] V.[mother's last name]."

[2] Angelina has not filed a respondent's brief. Accordingly, we decide the appeal based on the record, Enrique's opening brief, and Enrique's oral argument. (See Cal. Rules of Court, rule 8.220(a)(2).)

[3] We have drawn portions of our procedural summary from two prior appeals in this case, *Enrique M. v. Angelina V.* (2004) 121 Cal.App.4th 1371 [18 Cal.Rptr.3d 306] (*Enrique M.*) and *In re X.M.* (Jan. 16, 2008, D050052) (nonpub. opn.) (*In re X.M.*). It appears that the caption of *In re X.M.* should have been *In re X.V.-M.* in light of the undisputed evidence that X.'s last name has been V.-M. since 1998. We note the error in light of Enrique's claim in the present appeal concerning X.'s last name.

June 1998, the trial court entered an order that provided that Enrique and Angelina would share joint legal custody of X., that X.'s primary residence would initially be with Angelina, and that Enrique's custody rights would be gradually increased over time until the parents shared joint physical custody. The order further stated that X.'s last name would be "V.[mother's last name]-M.[father's last name]."

In late 2001, a dispute arose between Enrique and Angelina over where X. would attend kindergarten the following year. In December 2001, the court ordered that X. be enrolled at Richland Elementary School for kindergarten. In a written order filed in February 2001, the trial court stated: "[I]t is appropriate to enroll the child in the district of the primary custodial parent. The court sees Mother in that role."

In March 2006, Enrique filed an order to show cause in which he sought, among other things, to enroll X. in Tierrasanta Elementary School. In October 2006, the court denied this request. In January 2008, this court affirmed the trial court's order, concluding that the court had not abused its discretion in denying Enrique's request to change X.'s school.

In February 2008, Enrique filed an order to show cause in which he requested that the court order that X. be enrolled in Marshall the following year, and that the court change X.'s last name from "V.-M." to "M.V." With respect to his request that the court order that X. be enrolled in Marshall the following year, Enrique stated: "X. is in the last grade [fifth] offered at his current school. He will need to change schools next year. Marshall Middle School is located such that both Mom and I can share in driving and participating in X.'s academics. Mom drives by Marshall every day on her way to and from work. Marshall is one of the top middle schools in the county. X. wants to go to Marshall too."

Angelina opposed the requests and filed a responsive declaration. With respect to Enrique's request to enroll X. in Marshall, Angelina stated, "X. currently attends Richland Elementary School which filters into Woodland Park Middle School where X. would start the [sixth] grade in the fall of 2008." Angelina stated that Woodland Park has high test scores and that many of X.'s friends would be attending Woodland Park. Angelina explained that Woodland Park is located in the school district in which she lives.[4] Angelina

---

[4] It is undisputed that Woodland Park is located in San Marcos, where Angelina lives, and that Marshall is located in Scripps Ranch, where Enrique lives.

also requested that the court impose sanctions in light of Enrique's alleged "ongoing campaign of harassment since March 1998."

Enrique filed a declaration in support of his requests. With respect to his request to enroll X. in Marshall, Enrique argued, among other contentions, that Marshall's location would allow both parents to be involved in X.'s academics, and that Marshall was academically superior to Woodland Park. Enrique also stated, "If this Court were to select Woodland Park it would place a severe and undue burden upon my ability to parent X." Enrique also stated: "This Court is respectfully requested to take Judicial Notice under Evidence Code § 451[, subdivision] (a) that 'parenting one's child' is a protected fundamental right subject to strict scrutiny. This court is further respectfully requested to take Judicial Notice under Evidence Code § 451[, subdivision] (a) that 'participating in one's child's educational upbringing/academics' is part of 'parenting one's child.' "[5]

In April 2008, the trial court held a hearing on Enrique's order to show cause and Angelina's request for sanctions. The trial court denied Enrique's requests, and denied Angelina's request for sanctions. The court ordered that X. would attend Woodland Park and that he would maintain the last name of V.-M.

With respect to the issue of where X. would attend middle school, the court noted the proximity of Woodland Park to Angelina's residence and the fact that Angelina is responsible for taking X. to school on seven of the 10 schooldays in a two-week period. The court noted that Enrique's proposal would entail placing X. in a school approximately 15 miles from the residence in which X. primarily resides. The court further stated that it had examined the various ratings of the schools that the parties had offered, and found that "Woodland [Park] appears to have good scores." The court observed that Angelina had resided in the same neighborhood for approximately eight and one-half years, which had allowed X. to attend a single school that feeds into Woodland Park. The court commented that some of X.'s current classmates would likely attend Woodland Park. The court also noted that Enrique had changed residences numerous times in the preceding years.

---

[5] Evidence Code section 451 provides in relevant part: "Judicial notice shall be taken of the following: [¶] (a) The decisional, constitutional, and public statutory law of this state and of the United States and the provisions of any charter described in Section 3, 4, or 5 of Article XI of the California Constitution."

The court summarized its ruling by stating: "So for all of these reasons, at this time the court finds that the parents are unable to agree on a school at this juncture. The present orders provide for joint legal custody, which provides for issues involving education to be made jointly by the parents. To the extent that the parents cannot . . . mutually agree on the school, then it's placed upon this court to decide between the two options offered to the court. Considering all . . . of the factors that the court has noted, the court believes in this instance Woodland [Park] would be the superior school. For that reason, the court will side with the mother in the selection of Woodland [Park] for the next school."

On May 6, Enrique filed a notice of intention to move for a new trial on several grounds, including "newly discovered evidence" and "error in law." On May 16, 2008, Enrique filed a combined declaration and memorandum in support of his motion for a new trial. On June 30, Enrique filed a supplemental declaration and memorandum.

On July 5, having declined to rule on Enrique's motion for new trial, the trial court denied the motion by operation of law. (Code Civ. Proc., § 660.)

On July 8, Enrique filed an appeal from the trial court's April 22, 2008 order.

### III.

### DISCUSSION

A. *The trial court did not err in failing to apply the strict scrutiny standard in ruling on Enrique's request that the court order that X. attend Marshall*

Enrique claims that the trial court erred in failing to apply the strict scrutiny standard in considering his request that the court order that X. attend Marshall.[6] Enrique claims that the trial court was required to apply the strict scrutiny standard because the court's decision had the potential to burden

---

[6] We rejected a nearly identical claim in one of Enrique's prior appeals in this case. (*In re X.M., supra,* D050052.) Ordinarily, a ruling adverse to a party in a prior appeal precludes relitigation of the issue by that party unless there are significantly different facts in the second appeal. (*Bigbee v. Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49, 56–57 [192 Cal.Rptr. 857, 665 P.2d 947].) In light of our rejection of Enrique's claim on the merits, we need not consider whether our prior ruling precludes Enrique from relitigating his claim in this appeal.

Enrique's fundamental right to parent X. Whether the strict scrutiny standard applies in this case raises a question of law, which we review de novo. (See *Enrique M., supra*, 121 Cal.App.4th at p. 1378 [determining "the appropriate legal standard to apply in ruling on [Enrique's] requests raises a question of law, which we review de novo"].)

Neither the United States Supreme Court, nor any other court of which we are aware, has ever applied the strict scrutiny standard to a custody or custody-related dispute between two parents of a minor child.[7] In *Palmore v. Sidoti* (1984) 466 U.S. 429 [80 L.Ed.2d 421, 104 S.Ct. 1879] (*Palmore*), the United States Supreme Court concluded that a state trial court had violated the equal protection clause by awarding a father custody of a child after the mother married an African-American. The trial court based its award on the rationale that the child would likely suffer social stigma from the interracial marriage of his mother. (466 U.S. at p. 431.) In concluding that this order violated the equal protection clause, the *Palmore* court endorsed the best interest standard for adjudicating custody disputes between parents. (466 U.S. at p. 432 ["The [trial] court correctly stated that the child's welfare was the controlling factor."].) The *Palmore* court further explained: "The State, of course, has a duty of the highest order to protect the interests of minor children, particularly those of tender years. In common with most states, Florida law mandates that custody determinations be made in the best interests of the children involved. [Citation.] The goal of granting custody based on the best interests of the child is indisputably a substantial governmental interest for purposes of the Equal Protection Clause." (*Id.* at p. 433.)

The *Palmore* court was clear that the court was reversing the trial court's order because of "the Constitution's commitment to eradicating discrimination based on race." (*Palmore, supra*, 466 U.S. at p. 432.)

More recently, as Enrique notes, a plurality of the United States Supreme Court has stated, "[T]he Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." (*Troxel v. Granville* (2000) 530 U.S. 57, 66 [147 L.Ed.2d 49, 120 S.Ct. 2054] (plur. opn. by O'Connor, J.) (*Troxel*).) In *Troxel, supra*, 530 U.S. at pages 66–67, the United States Supreme Court concluded that a Washington nonparental visitation statute,

---

[7] By "custody-related" we mean, as in this case, a dispute between two parents concerning the manner in which their joint legal custody will be exercised.

applied so as to require visitation between two minor children and their paternal grandparents, unconstitutionally infringed on the petitioner mother's fundamental right to make decisions concerning the care, custody, and control of her children.

■ Ordinarily, governmental action that "substantially interferes with the enjoyment of a fundamental right is subject to strict scrutiny [citation], i.e., it must be set aside or limited unless it serves a compelling purpose and is necessary to the accomplishment of that purpose." (*In re Santos Y.* (2001) 92 Cal.App.4th 1274, 1315 [112 Cal.Rptr.2d 692].) However, the *Troxel* plurality did not expressly state whether it was subjecting the statute at issue in that case to the strict scrutiny standard. (See also *Troxel, supra,* 530 U.S. at p. 80 (conc. opn. of Thomas, J.) [noting that the opinions of the plurality, Justice Kennedy, and Justice Souter all recognized that "parents have a fundamental constitutional right to rear their children, including the right to determine who shall educate and socialize them," but that "curiously none of [the opinions] articulates the appropriate standard of review"].)

In *Jonathan L. v. Superior Court* (2008) 165 Cal.App.4th 1074, 1102 [81 Cal.Rptr.3d 571], the court cited *Troxel* and noted that the "level of scrutiny to which alleged violations of the parental liberty interest in directing the education of one's children are subject is not clearly established." However, the *Jonathan L.* court did note that, in the wake of *Troxel,* two California cases have applied strict scrutiny in cases alleging violations of the parental liberty interest. (*Herbst v. Swan* (2002) 102 Cal.App.4th 813, 819 [125 Cal.Rptr.2d 836]; *Punsly v. Ho* (2001) 87 Cal.App.4th 1099, 1107 [105 Cal.Rptr.2d 139].) The courts in both *Herbst* and *Punsly* applied *Troxel* in concluding that Family Code section 3102, which authorizes certain forms of nonparental visitation, unconstitutionally infringed on a parent's fundamental right to parent their child under the circumstances of those cases. (*Herbst, supra,* 102 Cal.App.4th at p. 819; *Punsly, supra,* 87 Cal.App.4th at p. 1107.)[8]

■ Enrique has not cited, and our own independent research has not uncovered, any California case in which a court has concluded that a trial court must apply the strict scrutiny standard in resolving a custody, or custody-related, dispute *between the parents* of a minor child. This is so despite the fact that California appellate courts, including the California Supreme Court, have routinely considered such disputes. Courts in these

---

[8] Family Code section 3102, subdivision (a) provides: "If either parent of an unemancipated minor child is deceased, the children, siblings, parents, and grandparents of the deceased parent may be granted reasonable visitation with the child during the child's minority upon a finding that the visitation would be in the best interest of the minor child."

cases have uniformly stated that, pursuant to applicable Family Code provisions, a trial court is to resolve such disputes in the best interests of the child. (E.g., *In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 955 [38 Cal.Rptr.3d 610, 127 P.3d 28]; *Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255 [109 Cal.Rptr.2d 575, 27 P.3d 289]; *In re Marriage of Burgess* (1996) 13 Cal.4th 25, 31–32 [51 Cal.Rptr.2d 444, 913 P.2d 473].)

Enrique also has not cited, and our own independent research has not uncovered, a single sister state case that supports Enrique's position. (See *McDermott v. Dougherty* (2005) 385 Md. 320 [869 A.2d 751, 808] [stating that "[t]he best interests of the child standard is, axiomatically, of a different nature than a parent's fundamental constitutional right," and that "In cases *between fit natural parents* who both have the fundamental constitutional rights to parent, the best interests of the child will be the 'ultimate, determinative factor.' "]; *In re R.A.* (2005) 153 N.H. 82 [891 A.2d 564, 576] (lead opn. of Broderick, C. J.) ["We note that, generally, strict scrutiny need not be applied to custody disputes. This is because in most cases courts will be balancing the rights of two fit parents, both of whom have the same constitutional right to custody of their children."]; *In re Parentage of L.B.* (2005) 155 Wn.2d 679 [122 P.3d 161, 178] ["No case has ever applied a strict scrutiny analysis in cases weighing the competing interests of *two parents*."]; accord, Brinig, *Does Parental Autonomy Require Equal Custody at Divorce?* (2005) 65 La. L.Rev. 1345, 1358 ["as a matter of constitutional law, the best interests of the child, protected by the state, should prevail over the constitutional interests of either of the competing parents"].)

We find particularly instructive an opinion from the Court of Appeals of Wisconsin, *Arnold v. Arnold* (2004) 270 Wis.2d 705 [679 N.W.2d 296] (*Arnold*), in which a father claimed that a custody and placement order violated his constitutional right to participate equally in the raising of his children. Like Enrique, the father in *Arnold* relied heavily on *Troxel* to support his claim that a trial court's order violated his fundamental right to parent his child. In rejecting the father's argument, the *Arnold* court distinguished *Troxel*:

"A dispute between a parent and grandparents represents a far different dynamic than the dispute between two natural parents with equal rights after a divorce. The grandparents in *Troxel* simply did not have a fundamental right to the care and custody of the children as do the parents here. So, when the *Troxel* court was speaking of fundamental rights in the raising of children, it was speaking to the existing disparity between natural parents and grandparents.

"Second, insofar as disputes between natural parents are concerned, while parents do have a natural right to care and custody of their children, [fn. omitted] this does not mean that parents have a 'fundamental right' to 'equal placement periods' after divorce. David has not demonstrated why, following a divorce between parents, the state does not have the right to arbitrate any dispute those parents may have over what happens to their children. [Citation.] We conclude that David has not met his heavy burden to show why the state should be foreclosed from allowing its courts to set placement schedules commensurate with the best interests of the children even if it means less than equal placement. His substantive due process argument fails." (*Arnold, supra,* 679 N.W.2d at p. 299.)

We agree with the *Arnold* court that *Troxel,* which involved *nonparental* visitation, does not compel courts to apply a substantive due process analysis in resolving custody or custody related disputes *between parents.* (*Troxel, supra,* 530 U.S. at pp. 100–101 (conc. opn. of Kennedy, J.) ["In short, a fit parent's right vis-à-vis a complete stranger is one thing; her right vis-à-vis another parent or a *de facto* parent may be another."]; accord, *Reno v. Flores* (1993) 507 U.S. 292, 303–304 [123 L.Ed.2d 1, 113 S.Ct. 1439] [Stating in dicta, " 'The best interests of the child,' a venerable phrase familiar from divorce proceedings, is a proper and feasible criterion for making the decision as to which of two parents will be accorded custody."].)

■ There is an absence of authority to support the application of the strict scrutiny standard in custody disputes between two parents generally, much less in a dispute between parents who share joint custody, concerning how their custody rights will affect the selection of a school for their child. Accordingly, we conclude that the trial court did not err in failing to apply strict scrutiny to Enrique's request to order that X. attend Marshall.[9]

B., C.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[9] In light of our conclusion, we need not consider the manner by which a trial court would apply strict scrutiny in such cases. Nor need we consider the merits of the trial court's best interest determination in this case, because Enrique's claim is limited to his contention that the trial court failed to apply the proper legal standard.

[*]See footnote, *ante,* page 1148.

## IV.

## DISPOSITION

The trial court's April 22 order is affirmed. The trial court's July 5 denial of Enrique's motion for new trial is affirmed. Enrique is to bear costs on appeal.

McConnell, P. J., and O'Rourke, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 26, 2009, S174840.