MAXWELL, J.,
for the Court:
¶ 1. The Clay County Chancery Court granted a divorce to Terri W. and Daniel C. “Craig” Vaughn and awarded custody of their one minor child to Terri. On appeal, Craig primarily argues the chancellor erred in denying his motion to compel discovery. Because Craig’s motion to compel was untimely and his due-process arguments misplaced, we find no error in the chancellor’s denial of the motion. We also find no error in the chancellor’s division of the marital home. Therefore, we affirm.
FACTS
¶ 2. On September 9, 2008, Terri filed for divorce. After the divorce trial had been continued twice at Craig’s request, Craig filed a motion to compel discovery on March 20, 2009. The chancellor denied the motion finding in part that it was untimely. After conducting a hearing, the chancellor entered a final judgment dividing the parties’ property, awarding custody of their minor child to Terri, and ordering Craig to pay child support. On appeal, Craig alleges the chancellor erred by (1) denying his motion to compel discovery and (2) improperly dividing the equity in the marital home.
*1286 DISCUSSION
I. Motion to Compel
¶ 3. Craig first argues that by denying his motion to compel, the chancellor deprived him “of his right to enjoy advance notice of Ter[r]i’s contentions[.]” The discovery issue concerns Terri’s refusal to answer interrogatory requests that she identify all proof in support of her position on each applicable Albright factor.[1]

A. Timeliness

¶4. On January 30, 2009, Craig propounded interrogatories and requests for admission to Terri. That same day Craig requested a continuance, which the chancellor granted. He rescheduled the trial from February 3, 2009, to March 16, 2009.
¶ 5. Terri responded to the requests for admission within thirty days but waited forty-two days to respond to the interrogatories. Terri objected to answering questions concerning the Albright factors, claiming they called for a legal conclusion. On March 16, the day of the hearing, Craig moved for another continuance. The chancellor again granted the continuance and rescheduled the matter to be heard one week later on March 23, 2009. On March 18, 2009, Craig served his motion to compel, noticing the motion hearing for March 23, the same date as the rescheduled trial. He did not file his motion to compel until March 20.
¶ 6. On March 23, the chancellor denied the motion and proceeded to hear the divorce case. The chancellor advised Craig that “if it develops in the trial that you’re prejudiced by the lack of discovery, then we’ll leave the case open for you to develop it, okay? I want everybody to have a fair shot today.”

(1) The Chancellor’s Discretion and Discovery

¶ 7. “Our trial judges are afforded considerable discretion in managing the pre-trial discovery process in their courts!.]” City of Jackson v. Presley, 942 So.2d 777, 781 (¶ 7) (Miss.2006). And they are given wide latitude in fashioning remedies for discovery violations. Marshall v. Burger King, 2 So.3d 702, 706 (¶ 8) (Miss.Ct.App.2008). We will not reverse the trial judge’s grant or denial of a motion to compel absent an abuse of discretion. See Edmonds v. Williamson, 13 So.3d 1283, 1292 (¶ 28) (Miss.2009).

(2) Reasonable Notice

¶ 8. Mississippi Rule of Civil Procedure 37(a) provides that “[a] party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling discovery!.]” Considering the issue of “reasonable notice,” the Mississippi Supreme Court in Boutwell v. Boutwell, 829 So.2d 1216 (Miss.2002), found no abuse of discretion in the chancellor’s denial of a motion to compel discovery. In Boutwell, the wife refused to answer deposition questions concerning an extramarital affair and whether she had allegedly permitted minors to consume alcohol in the marital residence. Id. at 1222 (¶ 28). Trial was set to begin on March 5, 2001, and the wife filed her motion to compel just four days earlier on March 1, 2001. Id. at 1223 (¶ 31). The Boutwell court found this notice, which amounted to less than two business days, was unreasonable. Id. The court also noted that the chancellor, due to the wife’s evasiveness during the deposition, allowed the husband’s attorney more “leeway” in questioning witnesses. Id. at (¶ 32).
*1287 ¶ 9. Here, the chancellor, at Craig’s request, pushed back the divorce hearing for almost a month and a half. The chancellor then granted Craig another continuance. The record indicates that two days later, on March 18, Craig mailed a copy of the motion to Terri’s counsel. But the motion was not filed with the court until March 20. This was less than three days before the rescheduled March 23 hearing, and less than one business day prior to the hearing. In reviewing this issue, we turn to Bowtwell, where the supreme court found that filing a motion to compel two business days prior to the hearing was insufficient notice. We also note that not only did Craig file his motion less than one business day prior to the March 23 hearing, he also waited until after the court had rescheduled the hearing. For these reasons, we find no error in the chancellor’s denial of Craig’s motion to compel for lack of reasonable notice.
¶ 10. Though Craig is correct that Terri served her interrogatory responses outside the thirty-day deadline,[2] her tardiness alone did not mandate that the chancellor grant Craig’s motion to compel. Nor does it automatically require reversal. Our inquiry instead focuses on whether the chancellor abused his discretion in denying the motion to compel, and if so, whether Craig was prejudiced. See, e.g., Tatum, v. Barrentine, 797 So.2d 223, 228 (¶¶ 19-20) (Miss.2001).
¶ 11. Considering Craig’s case, the chancellor explained at the outset of the hearing that if the lack of discovery prejudiced Craig, the chancellor would give him an opportunity to develop the issue. Yet our review does not show that Craig ever alerted the chancellor to any resulting prejudice from Terri’s failure to tailor her expected proof to Albright, in factor-by-factor format. And Craig has not explained how he was in any way surprised by the witnesses or documentary evidence presented by Terri.
¶ 12. Because of the notice issue and Craig’s failure to show resulting prejudice, we find no abuse of discretion in the chancellor’s denial of Craig’s motion to compel.

B. Due Process

(1) Procedural

¶ 13. Craig also argues the chancellor’s denial of his motion to compel infringed upon his due-process rights. His argument merges the concepts of procedural and substantive due process, both of which we will address. First, “[t]he guarantee of procedural due process includes the right to a fair and impartial trial.” Stuart v. Stuart, 956 So.2d 295, 300 (¶ 23) (Miss.Ct.App.2006) (citing Brown ex rel. Webb v. Blackwood, 697 So.2d 763, 769 (Miss.1997)). “A due process violation occurs where a party is not allowed a full and complete hearing before being deprived of life, liberty or property.” Id. (citing Childers v. Childers, 717 So.2d 1279, 1281 (¶ 8) (Miss.1998)). Though Mississippi has not squarely addressed this precise issue, several courts have held the Due Process Clause does not confer a constitutional right to discovery. Batagiannis v. W. Lafayette Cmty. Sch. Corp., 454 F.3d 738, 742 (7th Cir.2006) (citing Wardius v. Oregon, 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973)) (noting a civil litigant’s “complaints about a lack of pre-hearing discovery assume that there is such an entitlement, which there isn’t. There is no constitutional right to discovery even in criminal prosecutions.”); see also Council of City of New Orleans v. All *1288 Taxpayers, 841 So.2d 72, 76 (La.Ct.App.2003). To support his due-process argument, Craig cites a workers’ compensation case where this court mentioned that “the failure to abide by recognized discovery rules impacts whether a decision is seen as arbitrary and capricious, and [a] violation of due process.” Bermond v. Casino Magic, 874 So.2d 480, 484-85 (¶ 11) (Miss.Ct.App.2004) (emphasis added). But see Molden v. Miss. State Dep’t of Health, 730 So.2d 29, 40-41 (¶¶ 26-28) (Miss.1998) (administrative appeal where our supreme court appears to reject a similar argument that a due-process analysis could apply to the denial of a motion to compel discovery).
¶ 14. Drawing from traditional due-process notions, we are not persuaded that the denial of his motion to compel discovery, in itself, amounts to a due-process violation. And even if the broad pronouncement in Bermond applies here, we see no negative impact to Craig’s case, especially given his failure to point to any unfair surprise. Because Craig had a fair hearing and full opportunity to present evidence in support of his claim to custody, we find no procedural due-process violation.

(2) Substantive

¶ 15. Second, Craig suggests his substantive due-process rights were somehow violated by the chancellor denying his motion to compel. He cites the principle enunciated by the United States Supreme Court in Troxel v. Granville, 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) that “the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children.” The Troxel Court considered the issue of grandparent visitation and found unconstitutional, as applied, a Washington law authorizing broad third-party visitation, which the Court found infringed on the fundamental constitutional right of a mother to make child-rearing decisions. Id. at 72-75. But numerous courts, including the Mississippi Supreme Court, have found Troxel does not apply to custody disputes between natural parents. See Mabus v. Mabus, 847 So.2d 815, 819 (¶ 16) (Miss.2003); see also Enrique M. v. Angelina V., 174 Cal.App.4th 1148, 94 Cal. Rptr.3d 883, 888 (2009); McDermott v. Dougherty, 385 Md. 320, 869 A.2d 751, 808 (2005); In re R.A., 153 N.H. 82, 891 A.2d 564, 576 (2005); In re Parentage of L.B., 155 Wash.2d 679, 122 P.3d 161, 178 (2005); Arnold v. Arnold, 270 Wis.2d 705, 679 N.W.2d 296, 299 (2004).
¶ 16. We are confronted here with two natural parents asserting the same fundamental constitutional right to custody. Thus, we find Troxel inapplicable. Further, the chancellor’s discovery ruling did not infringe on Craig’s parental control or child-rearing decisions; he simply denied Craig’s request to compel discovery. For these reasons, we find no substantive due-process violations.
II. Marital Home
¶ 17. To address Craig’s property-division argument, we turn to our familiar manifest-error standard of review. We will not disturb a chancellor’s factual findings unless the chancellor’s decision was manifestly wrong, clearly erroneous, or the chancellor applied an improper legal standard. Wallace v. Wallace, 12 So.3d 572, 575 (¶ 12) (Miss.Ct.App.2009). We will not substitute our judgment for the chancellor’s, even if we disagree with his or her findings of fact and would arrive at a different conclusion. Coggin v. Coggin, 837 So.2d 772, 774 (¶3) (Miss.Ct.App.2003). When reviewing a chancellor’s interpretation and application of the law, our standard of review is de novo. Tucker v. Prisock, 791 So.2d 190, 192 (It 10) (Miss. 2001).
*1289 ¶ 18. Terri’s grandmother sold the marital home to Terri and Craig for approximately $70,000. From the proceeds of the sale, Terri’s grandmother loaned approximately $85,000 to the parties. Much of the loan was in the form of checks to the parties’ creditors. The grandmother then transferred the amount left over, $4,820.25, directly to Terri. Based upon a 2009 appraisal, the chancellor valued the home at $105,000. From that value, the chancellor subtracted the debt owed on the home to determine the equity in the home, which the chancellor split evenly between the parties. As a result, Craig was awarded $667.78 in the marital home’s equity.
¶ 19. Craig claims the chancellor “miscalculated” his share of the equity in the marital home. He asks that we remand for the chancellor to correct the alleged mathematical error. As evidence of this supposed miscalculation, Craig contends the chancellor: (1) overvalued the debt owed to Terri’s grandmother, which the chancellor found to be $35,000; and (2) failed to consider that his parents bought a new ah’ conditioner for the home. After examining the chancellor’s overall Ferguson analysis, we find no reversible error.
¶ 20. In ordering an equitable distribution of property, chancellors must apply the Ferguson factors, which include:
(1) contribution to the accumulation of property, (2) dissipation of assets, (3) the market or emotional value of assets subject to distribution, (4) the value of assets not subject to distribution, (5) the tax and economic consequences of the distribution, (6) the extent to which property division may eliminate the need for alimony, (7) the financial security needs of the parties, and (8) any other factor that in equity should be considered.
Hults v. Hults, 11 So.3d 1273, 1281 (¶ 36) (Miss.Ct.App.2009) (citing Ferguson v. Ferguson, 639 So.2d 921, 928-29 (Miss.1994)). Chancellors should also consider each party’s marital fault. Singley v. Singley, 846 So.2d 1004, 1013-14 (1126) (Miss.2002). There is a presumption that “the contributions and efforts of the marital partners, whether economic, domestic or otherwise are of equal value.” Hemsley v. Hemsley, 639 So.2d 909, 915 (Miss.1994).
¶ 21. In reviewing a chancellor’s findings, we do not conduct a Ferguson analysis anew. Goellner v. Goellner, 11 So.3d 1251, 1264 (¶45) (Miss.Ct.App.2009). Rather, we examine the chancellor’s judgment as well as the record to ensure that the chancellor applied the correct legal standard and did not commit an abuse of discretion. Id. at 1266 (¶ 52).
¶ 22. The chancellor made findings of fact and conclusions of law on each Ferguson factor. He found important that Terri and Craig contributed equally to the accumulation of marital property, with Craig being the primary wage earner and Terri contributing most domestic and child-rearing duties. The chancellor also noted that neither party had contributed stability or harmony to the marriage, with Terri having an extramarital affair and Craig exhibiting excessive drinking habits. With these considerations in mind, the chancellor divided the marital estate approximately 50/50.
¶ 23. Additionally, the chancellor divided the equity in the marital home exactly evenly between Craig and Terri. In so doing, the chancellor evenly split the debt owed to Terri’s grandmother. We note the chancellor abided by Craig’s wishes in ordering these divisions:
[By Craig’s Attorney]: What do you want the Court to do about your equity in the house?
[[Image here]]
[Craig]: Split it 50/50, or we can split the debt that we paid [Terri’s grand *1290 mother] 50/50 and then split it 50/50, you know.
The record supports, and Craig himself even testified, that the debt owed to Terri’s grandmother on the home was approximately $35,000. Craig explained that he had no problem with the chancellor splitting the equity remaining after accounting for the $35,000 debt to Terri’s grandmother, which is exactly what the chancellor, did.
¶ 24. We find the chancellor’s overall equitable division — which included Craig’s recommendation for division of the equity in the marital home — reasonable based on the equitable considerations involved in this case. We further point out that the chancellor actually awarded Craig over $3,000 more than Terri in marital assets, so Craig actually received slightly more than a 50/50 share.
¶ 25. Accordingly, we affirm the chancellor’s judgment.
¶ 26. THE JUDGMENT OF THE CHANCERY COURT OF CLAY COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., MYERS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ, CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.

. The only Albright factor not included in the interrogatories was the preference of the child. This factor was not applicable since the parties' minor child was under twelve years old.

. Mississippi Rule of Civil Procedure 33(b)(3) requires interrogatory answers and objections to generally be served within thirty days. As noted previously, Terri waited forty-two days to serve her responses.