# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**HUNTER J. REECE**
**JUDSON G. BARCE**
**BONNIE J. ADAMS**
Barce & Reece, P.C.
Fowler, Indiana

ATTORNEY FOR APPELLEE:

**JON P. MCCARTY**
Covington, Indiana



FILED
Dec 12 2013, 10:14 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| CHARITY LINDQUIST, ) | |
| ) | |
| Appellant-Petitioner, ) | |
| ) | |
| vs. ) | No. 23A04-1306-DR-277 |
| ) | |
| CORY LINDQUIST, ) | |
| ) | |
| Appellee-Respondent. ) | |

**APPEAL FROM THE FOUNTAIN CIRCUIT COURT**
The Honorable Susan Orr Henderson, Judge
Cause No. 23C01-0412-DR-490

**December 12, 2013**

**OPINION—FOR PUBLICATION**

**BAKER, Judge**

We first acknowledge that the trial court was faced with an extremely difficult—and almost Solemnic—decision in this case. More particularly, we must determine whether the trial court properly entered an order restricting the custodial parent, appellant-petitioner, Charity Lindquist (Mother), from permitting her and former husband, appellee-respondent, Cory Lindquist**'s** (Father) (collectively, the parents), children to continue an unsupervised relationship with Mother's boyfriend when Father is not otherwise entitled to be with them under the Indiana Parenting Time Guidelines (Guidelines). The trial court's order noted that Mother's relationship with her boyfriend was undermining and interfering with Father's relationship with the children. As a result, Mother contends that her constitutional right to due process was violated along with her right of freedom of association.

After reviewing the evidence, we initially observe that the trial court's determination that Mother was in contempt for denying Father his Christmas 2012 time must be affirmed.[1] However, because there is no evidence that Mother is an unfit parent or that permitting the children to spend unsupervised time with Mother's boyfriend violated the children's best interests or that he posed a danger or detriment to the children, we must conclude that this portion of the order was too restrictive and, therefore, the trial court improperly determined that the children were not permitted to spend any "one on one" unsupervised time with Mother's boyfriend. As a result, we affirm in part, reverse in part, and remand this case to the trial court with instructions that

---

[1] Mother does not challenge the trial court's finding of contempt with regard to this issue.

2

it craft an order that will not deny Father the opportunity to exercise additional parenting time in accordance with the Guidelines, but also to permit the children to interact with Mother's boyfriend on an unsupervised basis should Mother so desire, so long as Father's relationship with the children is not undermined or thwarted.

## FACTS

Mother and Father were formerly married and are the parents of triplet girls born on November 26, 2002. Shortly before the girls turned two years old, the parents separated. The Fountain Circuit Court dissolved the parties' marriage in July 2005.

The trial court awarded the parents joint legal custody of the girls and Mother was to have primary physical custody. Father was awarded parenting time as the parties could agree. In the event of a dispute, parenting time would be decided in accordance with the Guidelines.

At some point before the marriage was dissolved, Mother began a romantic relationship with Robert Criswell. Mother and the children began living with Criswell when the triplets were three years old. Criswell lived in the vicinity and held ownership interests in a local restaurant and movie theater. Mother and Criswell never married, but they lived together with the triplets for nearly seven years. Although Mother and the triplets eventually moved out, Mother and Criswell continued their relationship.

On June 6, 2011, Mother filed a petition to establish parenting time because she and Father could not agree on a schedule, particularly with regard to the children's participation in extracurricular activities. Although the trial court ordered the parents to

3

attend mediation, Father filed a petition for rule to show cause on September 15, 2011, at which time the trial court affirmed its order for the parties to participate in mediation.

The parents proceeded to mediation and filed an agreed order with the trial court on August 17, 2012, which settled most of the issues, except for Mother's alleged contempt and her perpetuation of the relationship between Criswell and the children. The first line of the agreed order provided that "the parties agree that they shall follow the Indiana Parenting Time Guidelines." Appellant's App. p. 23-24. However, approximately ninety days later, Mother allegedly violated the agreement by refusing Father any parenting time with the children on Christmas Eve or Christmas Day in 2012. Rather, Mother permitted the children to vacation with Criswell and his family in Mother's absence.

At a hearing that commenced in May 2013, the evidence established that Mother and Criswell had not been living together for nearly a year and a half. The children were approximately nine years old when Mother and Criswell stopped living together. Criswell has never petitioned the court to establish a legal parenting time relationship between him and the children since he and Mother separated.[2] However, even after Mother and Criswell separated, Mother has permitted Criswell to take the children to doctor appointments on multiple occasions without Mother present, has had the children overnight in his home on many occasions, has hosted slumber parties for the children and

---

[2] As is pointed out more thoroughly below, Criswell does not have a parental right to see and visit with the children.

4

has attended their extracurricular activities on a regular basis, and has taken them on family vacations without Mother.

Criswell testified that the parties' triplets often refer to him as "Dad." Tr. p. 8. Although Criswell has a twenty-seven-year-old son, he has "outfitted" his residence with young children in mind. Id. at 12, 27-28. More specifically, Criswell's home includes swings, a trampoline, all terrain vehicles, a playhouse and cabin, and numerous animals for the children.

Criswell also provides Mother financial assistance on a regular basis, which has included thousands of dollars over the three and one-half years since Criswell and Mother stopped living together. Criswell has also opened savings accounts for each of the children and has provided for them in his will. According to Criswell, he told the children about these accounts years ago, even though the children were very young.

Dr. Ann Carlson, a clinical child psychologist, testified at the hearing that children benefit from strong stable bonds, called "natural supports," from people who are "not necessarily family or paid providers," which aide in the child's development. Id. at 101-02.

On the other hand, Father testified that he is equally available and desires to spend as much time as he can with the children, but Mother has refused him several opportunities to do so. Father also testified that the relationship Mother is fostering between the children and Criswell is undermining his relationship with the children.

According to Father, the children compare him to Criswell during Father's parenting time, and have "very often" referred to him as "[Criswell]." Tr. p. 42.

Conflicting evidence was presented at the hearing, such that Mother testified that she has never called Criswell to provide care for the children or take them to appointments without first offering that opportunity to Father. On the other hand, testimony was presented that Mother never calls Father to allow him to pick up the children from school or take them to appointments if she is not able to do so.

Following the hearing, the trial court took the matter under advisement and entered its order on May 13, 2013. In light of the clear language of the parents' agreement and the Guidelines, the trial court found Mother in willful contempt for refusing Father parenting time during Christmas in 2012. The trial court also determined that

> The court has no doubt that the children are bonded to Mr. Criswell. He played an important role in their lives and clearly he cares for them deeply; however, he is not their father. Wife has allowed this relationship to interfere with children's primary relationship with their father. Wife is prohibited from allowing the children to spend one on one time with Mr. Criswell or any time with him unless she too is present (the court would envision brief periods like dinner and/or a movie on the occasional basis).
> . . .
>
> Wife is in contempt for her failure to allow husband his Christma[s] holiday visit. Husband shall be entitled to make-up that lost time by having the children for what would normally be wife's Memorial Day holiday weekend.

Appellant's App. p. 7-8 (emphasis added). Mother now appeals.

## DISCUSSION AND DECISION

Mother argues that the trial court's order with regard to custody and parenting time infringed upon her constitutional rights to raise the children and chilled her relationship with Criswell. Mother further claims that the order violated her constitutional right to free association and due process when it determined that Criswell may only visit the children when she is present. Mother further contends that the trial court's interpretation and application of the Guidelines to restrict Criswell's contact with the children was erroneous because there were no allegations or evidence that Mother was unfit or that any harm or detriment was posed to the children while they were with Criswell.

## I. Standard of Review

In custody and visitation matters, foremost consideration must be given to the best interests of the child. Marlow v. Marlow, 702 N.E.2d 733, 735 (Ind. Ct. App. 1998). We will generally reverse child visitation decisions only upon a showing of a manifest abuse of discretion. Hanson v. Spolnik, 685 N.E.2d 71, 79 (Ind. Ct. App. 1997). We neither reweigh the evidence nor reexamine the credibility of the witnesses. Id. Rather, we will view the record in the light most favorable to the trial court's decision to determine whether the evidence and reasonable inferences therefrom support the trial court's decision. Id.

## II. Mother's Contentions

### A. Infringement of Constitutional Rights

As noted above, Mother contends that the trial court's order violated her fundamental constitutional rights in raising her children by restricting their relationship with Criswell because there was no showing that any harm resulted to the children. Appellant's Br. p. 7, 11. Mother also claims that the portion of the order regarding the relationship restriction must be set aside because Father presented no evidence that the children's relationship and unsupervised time with Criswell undermined or damaged his own relationship with the children.

In support of her contention, Mother directs us to Troxel v. Granville, where the United States Supreme Court addressed a dispute between a parent and grandparents who sought to obtain visitation with their grandchildren over the parent's objection. 530 U.S. 57, 60 (2000). In Troxel, it was determined that there is a strong preference in favor of a natural parent to have the care of his children over a third party. Id. at 65-66; see also Guardianship of B.H., 770 N.E.2d 283, 286 (Ind. 2002) (observing that natural parents are entitled to the custody of their minor children, except when they are unsuitable persons to be entrusted with the care, control, and education of the children).

However, unlike the dispute in Troxel, the situation here involves two natural parents with equal rights following the dissolution of marriage. In fact, Troxel

8

recognized that "[T]here is a presumption that fit parents act in the best interest of their children." Troxel, 530 U.S. at 68.

In commenting on Troxel, at least one court has recognized that

A dispute between a parent and grandparents represents a far different dynamic than the dispute between two natural parents with equal rights after a divorce. The grandparents in Troxel simply did not have a fundamental right to the care and custody of the children as do the parents here. So, when the Troxel court was speaking of fundamental rights in the raising of children, it was speaking to the existing disparity between natural parents and grandparents.

Arnold v. Arnold, 270 Wis.2d 705, 711-12 (Wis. Ct. App. 2004). The Arnold court went on to note that this distinction is critical in addressing due process claims in a post-dissolution setting.

Additionally, this court observed in Kitchen v. Kitchen that

Parental rights are matters of constitutional import protected by the Fourteenth Amendment to the United States Constitution. . . . Accordingly we adhere to the limitation of our statutes and case law conferring standing only to parents, grandparents and step-parents. The trial court erred in concluding that it had the authority to grant third-party visitation to persons other than parents, step-parents, or grandparents.

953 N.E.2d 646, 649-50 (Ind. Ct. App. 2011).

Notwithstanding these pronouncements, we are confronted with a unique situation in light of the various provisions of Section I(C)(3) of the Guidelines, which provide that:

When it becomes necessary that a child be cared for by a person other than a parent or a responsible household family member, the parent needing the child care shall first offer the other parent the opportunity for additional parenting time, if providing the child care by the other parent is practical considering the time available and the distance between residences. The other parent is under no obligation to provide the child care. If the other parent elects to provide this care, it shall be done at no cost and without affecting child support. The parent

9

exercising additional parenting time shall provide the necessary transportation unless the parties otherwise agree.

The trial court referenced Section A of the Guidelines in its order that encourages parents to "recognize and address a child's basic needs," including the development . . . of meaningful relationships with other significant adults (grandparents, stepparents and other relatives) as long as these relationships do not interfere with or replace the child's primary relationship with the parents."

Although the evidence in this case established that Criswell has developed a positive and meaningful relationship with the children, he has no "parental right" to see and visit with the children, but Father, of course, does. On the other hand, when applying Section I(C)(3) of the Guidelines to the circumstances here, Criswell should be able to interact with the children, so long as it would be in the children's best interests to maintain their then-existing relationship with him. There have been no allegations of abuse or neglect against Criswell, and Dr. Ann Carlson testified at the hearing that continuing his relationship with the children would be in their best interests. Tr. p. 79.

In light of these circumstances, we believe that Criswell should be able to continue seeing the children so long as his relationship with them does not undermine or damage the relationship with Father. And under Section I(C)(3) of the Guidelines, Father must first be given the opportunity to exercise additional parenting time. That said, it is apparent that the trial court's order as it currently stands is too broad and restrictive and must, therefore, be crafted to allow Criswell to maintain his relationship with the children

because there is no evidence that he either abused or neglected them and the evidence showed that it was in the children's best interest to continue that relationship. However, the subsequent order must also reflect that Criswell's continued relationship with the children must not interfere with or undermine Father's right to additional parenting time in accordance with the Guidelines.

## B. Freedom of Association

In a related issue, Mother asserts that the trial court's order violates her right of association because "restricting her contact with her romantic interest, absent any harm to her children, infringed and has a chilling effect upon the Mother's First Amendment right to association." Appellant's Br. p. 11. Put another way, Mother argues that the trial court's "broad sweeping order" has prevented her from having any future intimate relationship with Criswell, "while she has custody of her children." Id. at 12.

The freedom of association "is a constitutional right which is included in the bundle of First Amendment rights made applicable to the States by the due process clause of the Fourteenth Amendment." Sills v. Irelan, 663 N.E.2d 1210, 1213 (Ind. Ct. App. 1996). Notwithstanding this pronouncement, there is nothing in the trial court's order that prohibits or prevents Mother from associating with Criswell now or in the future. To the contrary, Mother may associate with Criswell as often as she chooses. Appellant's App. p. 6-8. As a result, Mother's suggestion that the trial court's ruling chills her from having "any future intimate relationship with Criswell" is misplaced and this argument fails. Id. at 9.

11

On the other hand, this case concerns the children and, as noted above, the trial court's ruling restricts the children's association with Criswell unless Mother is also present. In that sense, we agree with Mother's notion that the trial court's ruling improperly impedes upon her parenting time with the children. However, while Mother has the freedom to associate with Criswell, that right does not trump Father's liberty interest in raising his children. Guardianship of B.H., 770 N.E.2d at 286.

That said, we realize that the trial court has impliedly determined from the evidence that Criswell's time spent with the children has detracted from the time that Father could have spent with them. However, as discussed above, so long as Father's rights to additional parenting time under the Guidelines are followed and respected, we see no reason why Criswell should not be allowed to continue his relationship with the children unattended by Mother. In other words, because there has been no showing of some danger or detriment to the children, there is not a legitimate basis for restricting Mother's fundamental right to control her children's relationships with others. As a result, this portion of the trial court's order must be set aside because it is too restrictive with regard to Criswell's continued relationship with the children. Thus, we are compelled to reverse this portion of the trial court's order.[3]

---

[3] Because we have already determined above from the evidence presented at the hearing that the portion of the trial court's order that currently restricts the children's continued relationship with Criswell is too broad and restrictive under the circumstances here, we need not discuss Mother's final assertion that the evidence was insufficient to support the trial court's ruling.

12

The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions that the trial court craft an order permitting the children to maintain their relationship with Criswell and to spend unsupervised time with him because it is within the children's best interest to do so, and so long as that relationship does not interfere with or impede Father's opportunity to exercise his parenting time in accordance with the Guidelines.

NAJAM, J., and CRONE, J., concur.