IN RE the MARRIAGE OF:

Cynthia M. KETTNER, n/k/a Cynthia M. Stelzl,
Petitioner-Respondent,

v.

Jeffrey S. KETTNER, Respondent-Appellant.††

Court of Appeals

*No. 01–1881. Submitted on briefs March 5, 2002.—Decided April 9, 2002.*

2002 WI App 173

(Also reported in 649 N.W.2d 317.)

†† Petition to review denied.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Christopher D. Walther* of *Walther Law Offices, S.C.*, of Milwaukee.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Richard E. Reilly* and *Kathryn A. Keppel* of *Gimbel, Reilly, Guerin & Brown* of Milwaukee.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. CURLEY, J.   Jeffrey Kettner appeals the order

dismissing his motion for modification of the physical placement of his son, Scott Kettner. He argues that the trial court erroneously exercised its discretion when it denied his request for an update of the psychological examinations completed several years earlier on him, his former wife, and son, and when it refused to permit him to introduce evidence of his son's placement preference. He also submits that the trial court erred when it permitted the guardian ad litem to introduce non-evidentiary matters. We affirm.

## I. BACKGROUND.

¶ 2. Kettner and his wife, Cynthia Kettner, k/n/a Cynthia Stelzl, were divorced on July 11, 1990. At the time of the divorce, Kettner was thirty-four years old and Stelzl was thirty-two. They had one child, Scott, who was a little over one year old at the time of the divorce. The divorce judgment awarded Scott's future care to his parents jointly, with Scott living primarily with Stelzl, and Kettner having physical placement with Scott at all reasonable times upon reasonable notice. After the divorce, Kettner and Stelzl resumed living together. However, in February 1993, Stelzl filed a motion seeking a modification of the order, which permitted Kettner physical placement at all reasonable times upon reasonable notice. An assistant family court commissioner granted Stelzl's motion, entering a fixed physical placement schedule. Kettner requested a *de novo* review in the circuit court. While the appeal was pending, the guardian ad litem hired Dr. Michael Cichy to evaluate Kettner, Stelzl, and Scott.

¶ 3. Ultimately, the parties entered into a stipulation resolving all the outstanding issues on February

22, 1996, and Dr. Cichy's testimony was not needed.[1] Several months later, Kettner filed a motion asking that Stelzl contribute to the costs of Dr. Cichy. This motion led to Stelzl filing a counter motion requesting that Kettner be found in contempt. Approximately one year later, in July 1997, a new trial judge entered an order following a hearing on the motions.[2]

¶ 4.    In May 2000, Kettner filed a motion requesting modification of Scott's physical placement. Kettner sought to have Scott live with him during the school year. He claimed that a substantial change of circumstances had occurred since the last order had been entered. Because his allegations were disputed, the trial court appointed a new guardian ad litem. Shortly thereafter, Kettner filed a motion seeking an update of the psychological examinations done by Dr. Cichy on Kettner, Stelzl, and Scott. After a hearing, the trial court took the matter under advisement. In a written decision, the trial court denied the motion. Ultimately, a hearing was held on Kettner's motion for a change in the physical placement order. At the hearing, Dr. Cichy was one of several witnesses who testified. Based upon

---

[1] Both parties wrote the trial court complaining of the delay in scheduling this and other matters. It is unclear from the record who was responsible for the delay. We caution the trial court and attorneys that parties should not have to wait three years to resolve a motion *de novo* dealing with custody and placement issues, and unreasonable delays, such as those that occurred here, should be avoided.

[2] It should be noted that other arguments and difficulties arose between the parties, including Kettner's accusations that his wife had failed to disclose an interest she had in her father's business, and fights between the two which led to Kettner's being convicted of battery and disorderly conduct. Kettner also brought a motion for change of placement in 1998 that was dismissed by the assistant family court commissioner.

the information he garnered and the examinations he had conducted years earlier, he related his opinion and discussed his earlier report. The trial court denied Kettner's request to modify the custody and placement order and dismissed his motion.

## II. ANALYSIS.

A. *The trial court properly exercised its discretion in denying Kettner's motion for updated psychological examinations.*

¶ 5. Kettner complains that the trial court should have granted his request to update the psychological reports prepared by Dr. Cichy in 1997. In his brief, he argues that his motion to modify the existing placement order was based on allegations that Scott was having psychological difficulties. Consequently, the trial court's failure to order a new psychological examination was an erroneous exercise of discretion. We disagree.

¶ 6. In custody disputes, trial courts often appoint a psychologist to assist the court in determining the mental health of the parties and the children, one of the factors the trial court may consider in determining custody and placement issues. *See* WIS. STAT. § 767.24(5)(e) (1999–2000).[3] WISCONSIN STAT. § 804.10(1) authorizes the trial court to order the parties to undergo psychological examinations.

> **Physical and mental examination of parties; inspection of medical documents. (1)** When the mental or physical condition, including the blood group or

---

[3] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

> the ability to pursue a vocation, of a party is in issue, the court in which the action is pending may order the party to submit to a physical, mental or vocational examination. The order may be made on motion for cause shown and upon notice to all parties and shall specify the time, place, manner, conditions and scope of the examination and the person or persons by whom it is to be made.

However, a trial court is not required to appoint expert witnesses on an issue unless it is one that is beyond the knowledge and experience of the average trier of fact. *See State v. Whitaker*, 167 Wis. 2d 247, 255–56, 481 N.W.2d 649 (Ct. App. 1992). Because the trial court has the discretion to order an expert witness examination, we review a trial court's order denying a request for psychological testing under the erroneous exercise of discretion test. *See id.* at 252.

¶ 7. We note that both Stelzl and the guardian ad litem opposed Kettner's request. Stelzl argued that Kettner alleged only a school problem, not a psychological problem. She also was opposed to Dr. Cichy being reappointed because she felt he was biased.[4] The guardian ad litem's objection was based on his concern that a psychological examination would require Scott to reveal his preference for where he wanted to live, and due to the pressure being applied on Scott by Kettner and Stelzl to state their respective home as his preference,

---

[4] Stelzl's attorney argued to the trial court that Dr. Cichy did not wish to be involved in this case because a complaint was made about him to the overseeing board by Kettner. This was untrue. The complaint was made on behalf of Stelzl; a fact that her attorney surely should have known, as he wrote the letter. Stelzl's attorney is reminded that, as an officer of the court, he has an obligation to be truthful in his representations made to the court. *See* SCR 20:3.3(a)(1).

the guardian ad litem felt it was not in Scott's best interest to have him examined. Initially the trial court also voiced some concern over the re-examination, commenting that the report would be costly, and noting that the parties had been involved in litigation for some time.[5] Ultimately, the trial court issued a written decision denying the motion.

¶ 8. Despite Kettner's contention that his request was grounded on his concern that his son was experiencing psychological problems, Kettner's three affidavits submitted to the court in support of his motion requesting an update of the psychological examinations center on factual disputes between Kettner and Stelzl regarding their son's best interests. He failed to challenge either the mental or physical health of the parties pursuant to WIS. STAT. § 767.24(5)(e). For example, in his third affidavit filed with the court shortly before the motion was heard, Kettner stated:

4. There are factual disputes between Cynthia and I regarding the following issues in Scott's life:

    a. That Scott is struggling socially at school;

    b. That Scott has lost respect for Cynthia, and Cynthia has been unable to discipline him;

    c. That Scott is struggling socially at school because of conflict in Cynthia's home;

    d. That Scott is unhappy with his present school and present living arrangements and would like to reside with me full-time during the school year; and

---

[5] The trial court was probably referring to a letter in the record from Stelzl claiming she had already spent $20,000 in attorney fees.

e. That Scott has experienced substantial stress at Cynthia's home because of her recent remarriage.

The only way to resolve the factual disputes between Cynthia and I one way or the other is either through Scott's testimony in court, or through a psychological examination which can address the above issues.

¶ 9. The allegations do not claim that Scott suffers from any psychological problems requiring psychological evaluation or treatment; rather, they center on Scott's alleged problems with his adjustment at school and his relationship with his mother. Scott had a voice in the proceedings – his guardian ad litem. Kettner's disagreement with the guardian ad litem's recommendation does not justify testimony from a psychologist when Scott's mental health was not at issue. Under Kettner's rationale, every time a parent alleges that his or her child is having a difficult time adjusting to school or adjusting socially after a divorce, that child would be subject to psychological testing. This is not the test under Wis. Stat. § 767.24.

¶ 10. This same theme was repeated in Kettner's oral argument to the court at the time of the hearing. Kettner's attorney stated that the primary reason for the request was to resolve factual disputes between the parties.

[KETTNER'S ATTORNEY]: The only way to move this along is to have the parties undergo psychological examination and see whether dad's view is accurate or whether mom's view of how this kid is doing is accurate. Otherwise we're going to have a trial where the Court is going to have two separate views. We don't know where the truth is.

Thus, the record belies Kettner's assertions that he

requested the examination to explore Scott's psychological problems. Rather, it would appear the purpose of Kettner's request for psychological examinations was to assist the trial court in determining whose version of the facts was correct. Trial courts are capable of deciding factual disputes without the aid of a psychologist. Given Kettner's stated purposes, we cannot fault the trial court for denying the motion. The trial court properly exercised its discretion by refusing to order a costly and time-consuming report to assist in deciding what were factual disputes.

¶ 11.   Kettner has also criticized the trial court's decision, claiming that the trial court decided the issue on grounds never raised by him. The trial court wrote:

> The Court after reviewing the file cannot help but agree with the guardian ad litem that I cannot permit a psychologist to make the determination of placement. While [a] Court can take the testimony of the psychologist under advisement, it's up to the Court to make the ultimate determination in this matter . . . .

> The guardian ad litem in a letter to the Court says as follows, quote, children do not decide where they are going to live; children should not be forced to make a choice between their parents; children should not be asked to report on the other's parent's activities; children should not be put in the middle of these types of actions, end quote.[6] This capsulizes the issue in this case.

¶ 12.   The trial court's written decision was in response to issues raised by the guardian ad litem. In its

---

[6] The letter referred to by the trial court was not addressed to the trial court. As will be noted later, it was written to the attorneys.

written decision, the trial court was merely explaining that its role was to decide factual disputes, and the court should not abdicate this responsibility to a psychologist. The trial court stated it did not need a psychologist to assist it in deciding which version of the facts to accept. The trial court's statement concerning its view of the limited role that a child should have in deciding placement was also directed at the guardian ad litem's concern that a psychological examination could lead Scott to believe that he was required to decide between his parents. Thus, we are satisfied that the trial court properly addressed the issues raised by the parties in denying the motion.

## B. *The trial court properly exercised its discretion.*

¶ 13. Kettner next submits that the trial court erroneously exercised its discretion when it refused to permit him to introduce evidence that his son voiced a preference for living with him. Because WIS. STAT. § 767.24(5)(b) lists the wishes of a child as a factor to be considered by the trial court when determining custody and placement issues, Kettner claims the trial court improperly prevented him from eliciting the child's wishes from Dr. Cichy and erroneously exercised its discretion in sustaining objections to questions posed to him concerning Scott's preference as to his placement. He is wrong on both counts.

¶ 14. The trial court's determination to admit or exclude evidence is a discretionary decision that will not be upset on appeal absent an erroneous exercise of discretion. *State v. Jenkins*, 168 Wis. 2d 175, 186, 483 N.W.2d 262 (Ct. App. 1992).

¶ 15. First, Dr. Cichy did testify about Scott's preference stated to the doctor four years previously.[7]

[KETTNER'S ATTORNEY]: There's an occasion later on in your report that prior to May 2, 1997, Scott had expressed his desire during psychotherapy to spend more time with his father?

[STELZL'S ATTORNEY]: Objection. Irrelevant. There's no relevance before the Court today. We're talking about something that may have been expressed prior to 1997 which was dealt with in a hearing where Mr. Kettner had very competent counsel, and the issues were litigated, resolved, and resulted in an order.

THE COURT: You may proceed.

[KETTNER'S ATTORNEY]: Do you remember the question? Would you repeat it, please.

THE COURT: We'll have the reporter read it back.

(Question read.)

DR. CICHY: That's correct, he did.

[KETTNER'S ATTORNEY]: How exactly did he express that? Was that in the form of testing or was that in the form of –

DR. CICHY: It was in the form of a conference that I had with him individually. That was not in his father's or mother's presence.

Thus, the trial court was aware of the fact that Scott had previously indicated a preference for living with his father.

---

[7] Although this testimony came in as an offer of proof pursuant to WIS. STAT. § 901.03, it appears that everyone, including the trial court, treated it as substantive evidence.

¶ 16. Second, the trial court properly sustained the objection to Kettner's attorney's questions asking for hearsay testimony. Kettner points to the following exchange to illustrate the trial court's erroneous exercise of discretion.

> [KETTNER'S ATTORNEY]: How do you think the circumstances have changed?
>
> MR. KETTNER: Scotty's attitude towards people, life, sports, his – the difference in how his grades were going and all of a sudden now they're up since we got court papers going, his attitude that he has living with his mom these days, things that he tells me about in the house he's not suppose to –
>
> [STELZL'S ATTORNEY]: I'm going to object to any testimony of the child through the father.
>
> THE COURT: I think that the guardian ad litem can address that. Mr. Mulligan?
>
> [GUARDIAN AD LITEM]: From –
>
> THE COURT: You've had conversations with the child?
>
> [GUARDIAN AD LITEM]: I have, yes.
>
> THE COURT: Do you have any objection to this?
>
> [GUARDIAN AD LITEM]: Well, I – I don't know – I do have an objection, I guess, because I think coming from either parent, it's a self-serving statement.
>
> THE COURT: Objection sustained. Proceed.

Although a statement that is "self-serving" is not prohibited under our rules of evidence, nevertheless, Kettner's answer was objectionable on hearsay grounds.

This court may sustain a trial court's discretionary determination on a basis independent of that invoked by the trial court. *State v. Ralph*, 156 Wis. 2d 433, 438, 456 N.W.2d 657 (Ct. App. 1990). The record reflects that the witness was about to recite hearsay testimony gleaned from his son. Indeed, no hearsay exception was offered by Kettner's attorney when an objection was made by the guardian ad litem.

¶ 17.   Moreover, Kettner's suggestion in his brief that the only other person who could testify to Scott's wishes was the guardian ad litem is incorrect. Kettner could have requested that his son testify. Kettner chose not to do so.

C. *Because no objection was raised to the guardian ad litem's letter, or the guardian ad litem's questioning by the trial court, the issues have been waived.*

¶ 18.   Finally, Kettner argues that the trial court erred when it permitted the guardian ad litem to "introduce non evidentiary matters." Specifically, Kettner complains that a letter authored by the guardian ad litem sent to the attorneys for Kettner and Stelzl was made part of the file and considered by the trial court in reaching its decision, and that the trial court delegated the decision making in this case to the guardian ad litem.

¶ 19.   Citing *Hollister v. Hollister*, 173 Wis. 2d 413, 496 N.W.2d 642 (Ct. App. 1992), Kettner states that the guardian ad litem should not have submitted information to the court that contained any new factual information. Further, Kettner points to the trial court's questioning of the guardian ad litem at the close of the

hearing as an indication that the trial court delegated to the guardian ad litem the role of fact finder and decision maker.

■

¶ 20.   Kettner has waived his right to address these issues because he failed to object to the trial court's consideration of the contents of the guardian ad litem's letter written, as noted, not to the court, but to opposing counsel. Nor did Kettner object to the court's questioning of the guardian ad litem at the close of testimony. Failure to raise specific challenges in the trial court waives the right to raise them on appeal. *State v. Rogers*, 196 Wis. 2d 817, 828–29, 539 N.W.2d 897 (Ct. App. 1995).[8]

---

[8] We do agree with Kettner that the trial court's questioning of the guardian ad litem was inappropriate. The dialogue between the trial court and the guardian ad litem appears to ask the guardian ad litem for his opinion of the facts and solicited from him additional information not in the record.

[KETTNER'S ATTORNEY]:   Your Honor, I have nothing further of this witness, subject to –

THE COURT:   All right. I've heard your case now, and I got [Stelzl's attorney's] motion.

[T]here have been several allegations made today. There have been fights at school. The grades aren't good, and he has been taken out of school a number of times. What's [the guardian ad litem's] opinion in this area?

[GUARDIAN AD LITEM]:   Your Honor, with regard to the being taken out of school, he was taken on a vacation. He made up the work, and everything got back to normal.

I think it would be setting a terrible precedent if we allowed custody to be transferred – placement to be transferred if, in fact, there were – the child came out of school.

THE COURT:   What about the fights?

¶ 21. Moreover, the letter was not an exhibit at the hearing and there is no indication that the guardian ad litem sent the letter in question, written while the matter was pending, to the trial court. It is addressed to

[GUARDIAN AD LITEM]: Well, that's a matter of debate whether they took place or if they did and what the seriousness of them was. There's a real question. My checking with the school there was no record of it, so –

THE COURT: What about the grades?

[GUARDIAN AD LITEM]: Well, again, the grades – If he missed, these papers surely would be incomplete or his progress would be inconsistent. He made up the work, and he's doing much better.

There's a whole nother' [sic] side to this, Judge. These people have fought like cats and dogs, which could attribute to the reason this young boy wasn't doing well, and Scott as set forth in the letter – I heard Mr. Kettner in messages, and he's also indicated that his son has the right to hate her new husband, not to be nice to him, not to talk to him, not to do anything for that man because he hates him so much, and Scott's own knowledge of that boy was the hatred that was given to him from his father – tremendous hatred of this man.

I think Scott if he talked to him –

THE COURT: I – I don't know really. The parties –

[GUARDIAN AD LITEM]: I think maybe that caused the grade downfall.

THE COURT: Let me tell you, I have allowed [Kettner's attorney] latitude today because I think that I've got to be concerned about the child. These allegations do not in my mind rise to the cause for changing custody.

While the guardian ad litem is free to comment on the submitted evidence and make legal arguments, the guardian ad litem is not the final arbiter of the truth. Nevertheless, we are satisfied from our reading of the record that the trial court reached its own independent decision that, based upon the evidence presented, there was insufficient evidence to find a substantial change of circumstances.

■

the attorneys for both Kettner and Stelzl, and the letter indicates that the only copy was sent to Stelzl. Further, the letter merely sets out the disputes and conflicts as seen by the guardian ad litem and invites responses and assistance from the parties in defusing the animosity between the parties.

¶ 22. For the reasons stated, the trial court's decision is affirmed.

*By the Court.*—Order affirmed.

¶ 23. FINE, J. (*dissenting*). Although I agree with much that the Majority has written, I believe that the trial court *did* erroneously exercise its discretion in refusing the father's request for an updated psychological evaluation. Accordingly, I respectfully dissent.

¶ 24. First, although the father's affidavit, which is quoted in paragraph 8 of the Majority Opinion, talks of "factual disputes," all of the subparts implicate, to some degree or another, psychological stresses in the boy's life and his ability to cope with those stresses. Second, the initial evaluation was four years old; the boy was eleven and one-half years old when the trial court entered its written order denying the father's request for the updated evaluation. The intervening years are times of stress and turmoil even for children in relatively non-stressful environments. Indeed, even the trial court recognized that the old psychological evaluation was "somewhat stale."

¶ 25. It is true, as the Majority opines, that the trial courts are vested with the initial discretionary determination of contested placement issues. But discretion can only be exercised against a full exposition of the relevant facts. In my view, a four-year-old psychological evaluation of an eleven-year-old child is less than the required full exposition. Simply put, the father was

345

entitled to have the trial court consider all material information. The trial court decided to consider only some of that information, and I would reverse for that reason.