**COURT OF APPEALS
DECISION
DATED AND FILED**

**August 6, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

| | |
|---|---|
| **Appeal No. 2022AP2115** | Cir. Ct. No. 2019FA151 |
| **STATE OF WISCONSIN** | **IN COURT OF APPEALS DISTRICT III** |

IN RE THE MARRIAGE OF:

MEGAN LYNN KRANZ,

    PETITIONER-RESPONDENT,

  V.

MICHAEL ROBERT KRANZ, JR.,

    RESPONDENT-APPELLANT.

---

APPEAL from orders of the circuit court for Pierce County: ELIZABETH L. ROHL, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Michael Robert Kranz, Jr., pro se, appeals an order of physical placement and an order regarding child support and attorney fees entered as part of his divorce from Megan Lynn Kranz.[1] Michael makes several arguments challenging various aspects of the divorce proceedings, with a focus on the circuit court's determination that Megan would have primary placement of their minor child during the school year.

¶2 We conclude that the circuit court acted within its statutory authority at each stage of the proceedings and that Michael has failed to identify any error in the court's determinations. We also reject Michael's constitutional challenges to the proceedings. We therefore affirm the court's orders.

## BACKGROUND

¶3 We briefly recount the procedural facts here, providing additional details as relevant to our discussion of the specific issues raised by Michael in this appeal.

¶4 Megan filed a petition for divorce on October 31, 2019, and served Michael with the petition on January 5, 2020. The record does not show any further proceedings for more than a year. On March 30, 2021, the circuit court issued an order stating that the matter had not been diligently prosecuted and would be dismissed in twenty days "unless good cause is shown within the twenty days why this order should not take effect." Megan contacted the court to schedule a pretrial conference for April 30, 2021.

---

[1] Because the parties share the same last name, we refer to them by their first names to avoid confusion.

¶5     Both parties filed parenting plans, with Megan seeking sole legal custody and primary placement. Michael sought joint legal custody and shared placement, but he proposed a wide variety of restrictions on the minor child's activities and interactions with others.[2] Michael further proposed that the minor child would be homeschooled by Michael and not enrolled in public school.

¶6     The parties attended mediation on June 10, 2021, but they did not reach an agreement. The circuit court appointed a guardian ad litem (GAL) on August 4, 2021. On October 8, 2021, Megan filed a notice of motion to enroll the parties' minor child in public school. In this motion, Megan stated that Michael was not cooperating with the GAL and that Michael had refused to attend a deposition or provide any discovery information regarding the child's homeschooling. A hearing was set for October 29, 2021.

¶7     On October 14, 2021, Michael filed an objection to the hearing, requesting more time to discuss his parenting plan with Megan and to discuss homeschooling with an attorney and with the Department of Public Instruction. Regarding Megan's allegation that he was not cooperating with the GAL, Michael stated that he was scheduled to meet with the GAL on October 19. Regarding Michael's failure to attend the deposition, Michael stated that he had not received

---

[2] For example, Michael proposed that both parents would have to provide a signed agreement before the minor child could watch any movie or listen to any music, or visit any museum, "historical or government memorials or buildings," theme parks, shopping malls, restaurants, or parks, or go camping. Michael further proposed that each parent provide the other with "a list of people that [the minor child] is around regularly or for more than 1 hour" and he suggested that the minor child "not be left with any person, other than [the parents'] mothers, unsupervised … [i]nside or outside" without both parents' signed agreement. Finally, Michael proposed that the plan include "privacy from individuals such as friends and family" and that any contact with either parent from friends and family "must be discussed and mutually agreed upon" before the contact occurred. This restriction would apply to "calls, texts, emails, letters, drop-bys, etc."

the attorney's initial email regarding the deposition and that he also "questioned the validity [of the deposition] as it was not on the circuit court's order."

¶8     The circuit court responded to Michael's objection on the same day by stating that "[t]he hearing will remain on October 29 as scheduled." The court explained that "as school has already started, it is a matter of some urgency." The record does not contain a transcript of the October 29 hearing. Following the hearing, however, the family court commissioner entered a temporary order dated November 2, 2021. This temporary order gave Megan sole legal custody and placement of the minor child and further required that the child be enrolled in public school. In addition, the temporary order required Michael to undergo a psychological examination with Dr. Bradley Nevins at Michael's own expense, with the results to be provided to the GAL.

¶9     On November 10, 2021, an attorney filed a notice of appearance on Michael's behalf. On the same day, the GAL notified the circuit court that Dr. Nevins had completed his report and would be testifying at the contested divorce hearing on November 12, 2021. At the hearing, however, the parties informed the court that they had reached a stipulation regarding most of the issues in the divorce. Pending the submission of a new stipulated order, the court continued the temporary order entered on November 2, 2021. The court scheduled a review hearing for February 8, 2022.

¶10    On January 18, 2022, Michael's attorney filed a motion to modify the temporary order on the grounds "that restrictions of placement for child safety have been lifted." Along with this motion, Michael submitted several assessments and evaluations from various mental health professionals, including an evaluation by Dr. Jeffrey Holmgren. Michael argued that these newly submitted mental

health assessments "support the opportunity of co[-]parenting and without restriction."

¶11     At the hearing on February 8, 2022, the parties again informed the circuit court that they had reached a stipulation regarding custody, placement, and schooling.  The court expressed uncertainty about the terms of the parties' agreement, but it ordered the parties to submit their stipulated order within thirty days.

¶12     On March 11, 2022, Michael submitted a proposed temporary order stating that "the parties shall have joint legal custody and exercise shared placement of their minor child."  The circuit court declined this proposed order because "[t]he parties were ordered to circulate a stipulation that is signed by the parties to ensure there is an agreement."

¶13     On March 23, 2022, Megan submitted a proposed judgment of divorce that incorporated the terms ordered at the November hearing, including the circuit court's order that the temporary order regarding custody and placement would continue until further order of the court.  As set forth in the temporary order, Megan would have sole legal custody of the minor child, and Michael would have only supervised placement, with no overnights.  The court entered the proposed judgment on March 30, 2022.

¶14     The circuit court held a status conference on August 24, 2022.  At the conference, Michael's attorney stated that the parents had resolved all issues through counseling with the exception of where the minor child would attend school.  His attorney further averred that Megan had moved to Hudson and planned to enroll the minor child in the Hudson School District.  Michael still

5

lived in River Falls and preferred to enroll the minor child in the River Falls School District.

¶15 The circuit court explained that, under the continuing temporary order, Megan still had sole legal custody and therefore had the final determination regarding school enrollment. Michael's attorney stated that he believed that the proposed order he submitted in March gave the parties joint legal custody. The court explained that it had declined that order because it did "not adequately address[] all the issues that were agreed to, nor was it signed by all the parties." Because the parties had not reached a stipulation to modify the temporary order, the court set Michael's January 18 motion to modify the temporary order for a contested hearing.

¶16 The contested hearing took place on September 15, 2022, and was continued to September 23, 2022. At the end of the hearing, the circuit court concluded that the parties would have joint legal custody, but that Megan would have primary placement during the school year. The court further determined that the minor child would continue her school enrollment in Hudson. Over Michael's objections, the court entered its order on October 6, 2022. On October 24, 2022, Michael filed a motion for reconsideration. On October 28, 2022, the court denied Michael's motion for reconsideration without a hearing.

¶17 The circuit court held a hearing on financial issues on November 22, 2022, and the parties submitted written arguments on November 30, 2022. On January 4, 2023, the court ordered Michael to pay Megan $466 per month in child support, with an effective date of October 1, 2022. The court also ordered Michael to pay $2,500 toward Megan's legal fees. On January 6, 2023, Michael

filed a notice of appeal from the court's order regarding "child support monthly payments and legal fees."

## DISCUSSION

¶18    We begin by noting that, as a pro se litigant, Michael's arguments are often rambling and unintelligible.    Nonetheless, we have addressed his arguments to the best of our ability.    To the extent that we do not specifically address an argument that Michael intended to make, we deem that argument to be undeveloped and therefore reject it. *See Piette v. Horn*, 2015 WI App 41, ¶22 n.4, 362 Wis. 2d 484, 864 N.W.2d 900 (we need not consider arguments that are insufficiently developed).

¶19    We further note that Michael's reply brief challenges much of the precedential authority cited in Megan's brief by arguing that these decisions are incorrect or outdated.    Such arguments are unavailing because our supreme court "is the only state court with the power to overrule, modify or withdraw language from" its previous decisions, as well as from published decisions of the court of appeals. *See Cook v. Cook*, 208 Wis. 2d 166, 189-90, 560 N.W.2d 246 (1997).

## I.  The Temporary Order dated November 2, 2021

¶20    Michael argues that the temporary order entered on November 2, 2021, violated his constitutional rights.    Michael contends that his "rights were ignored to favor a schooling choice [he] did not agree with."    We have reviewed the authorities that Michael cites in connection with this argument, and they do not have any apparent bearing on the temporary order. *See Lessard v. Schmidt*, 349 F. Supp. 1078 (E.D. Wis. 1972) (addressing involuntary commitment); *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718 (1982) (addressing a single-sex

institution's refusal to admit male students). Nor does Michael explain how these decisions apply to the temporary order.[3] We therefore reject Michael's challenges to the temporary order as undeveloped. *See* ***Riley v. Town of Hamilton***, 153 Wis. 2d 582, 588, 451 N.W.2d 454 (Ct. App. 1989) (we do not consider "conclusory proposition[s]" that "are not specifically argued").

## II. Michael's Proposed Modification to the Temporary Order

¶21 Michael also challenges the circuit court's decision on March 11, 2022, to decline Michael's proposed order modifying the temporary order. Michael contends that the parties had reached a stipulation to modify the temporary order and that Megan was supposed to submit a proposed order reflecting their stipulation. When Megan failed to follow through, Michael proposed his own order, which gave both parents joint legal custody and shared placement.

¶22 We have reviewed the record and see no error in the circuit court's decision to reject Michael's proposed order. Michael's proposed temporary order stated that "the parties shall have joint legal custody and exercise shared placement of their minor child." The court declined this order because "[t]he

---

[3] To the extent that Michael is challenging the requirement that he undergo mental health treatment, we have previously explained that mental health evaluations are common in custody disputes, and they are expressly authorized by WIS. STAT. § 804.10(1) (2021-22). *See* ***Kettner v. Kettner***, 2002 WI App 173, ¶6, 256 Wis. 2d 329, 649 N.W.2d 317. Michael's challenge to the circuit court's exercise of its statutory authority goes nowhere because we see no indication that Michael objected to the mental health evaluation, nor did he seek review of this order. An "appellant [must] articulate each of its theories to the [circuit] court to preserve its right to appeal." ***State v. Rogers***, 196 Wis. 2d 817, 829, 539 N.W.2d 897 (Ct. App. 1995).

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

parties were ordered to circulate a stipulation that is signed by the parties to ensure there is an agreement." We see no error here because Michael's proposed order contained no indication that both parties had, in fact, stipulated to this proposal, nor did the proposed order accurately reflect the stipulations discussed on the record during the November or February hearings.

¶23 Michael contends that the circuit "court allowed Megan to continue to defer, intentionally stifling any agreement." We reject Michael's attempt to blame the court for the parties' failure to reach a stipulation. Our review of the record indicates that the court was prepared to take testimony and render a decision regarding placement on November 12, 2021, and again on February 8, 2022, but on both occasions, Michael stated that a hearing was not necessary because the parties had reached an agreement. On both occasions, the court expressed skepticism about the parties' request to leave the temporary order in place, as well as the parties' assertions that they had reached a stipulation to modify that temporary order.

¶24 As it turns out, the circuit court's skepticism was well-founded because the parties did not, in fact, agree on key issues. Megan's attorney subsequently explained that the reason the parties were unable to reach a stipulation after the February hearing was because Michael was not following through with Megan's understanding that she would have the final say regarding school enrollment issues. Specifically, Megan had enrolled the minor child in a YMCA program for education and socialization, but Michael did not take the child to the program on his placement days. As a result, at the status conference on August 24, 2022, Megan stated that she had decided to contest shared placement and joint legal custody because Michael "doesn't do the things that he should do, doesn't do the things that his counsel has, apparently, told him to do, and he hasn't

done the things that this court has told him to do." Because the parties were unable to stipulate to modify the temporary order, the temporary order remained in place until the contested hearings on Michael's motion to modify that order.

## III. Final Order Regarding Placement

¶25 Michael makes several arguments challenging the circuit court's final order regarding placement, which was entered on October 6, 2022, following contested hearings on September 15 and 23, 2022. At the conclusion of these hearings, the court adopted the GAL's recommendation that Megan would have primary placement due to "the concerns raised about … mental health." The court further determined that the minor child would continue in Hudson schools based on the GAL's recommendation. The court determined that summer placement would be divided equally between the parents. The court instructed the parties to propose a summer schedule. During the hearing, both parents agreed to a two-two-three schedule for the summer months.

¶26 The circuit court asked the GAL to circulate a proposed order reflecting its decision and gave the parties one day to object. Prior to the entry of the GAL's order, Michael sought reconsideration of the court's placement schedule and submitted a proposed placement order giving Michael primary placement during the summer. In addition, after the GAL submitted a proposed order to the court, Michael filed an objection. The court declined Michael's proposed order on the ground that it did not reflect the court's decision at the September 23 hearing. Instead, the court entered the GAL's proposed order as its final order on October 6, 2023.

¶27 On October 24, 2022, Michael filed a motion for reconsideration. As grounds for reconsideration, Michael argued that he "ha[d] been primary

parenting for 5 years up until [the] divorce," and "[t]he child is healthy and admittedly has a primary affection." Michael contended that his pro se parenting plan was submitted "to raise issues for post-divorce parenting" but "was used at trial to discredit him." Michael further contended that the circuit court had disregarded "phycological [sic] counseling opinions and psychiatrist opinions favorably discounting concern" and noted that these opinions had initially "result[ed] in a stipulation to joint legal custody and shared placement."

¶28    Michael also argued that he "was prejudiced at trial by [Megan] demanding sole legal custody and primary placement." Michael contended that the GAL had initially opposed Megan's proposal and, instead, had "recommended shared placement with school[ing] at River Falls." However, "the night before trial, [the] GAL emailed that he had changed his mind." Michael argued that he was therefore "surprised at trial to not have the opportunity to call Dr. Holmgren and put his evaluation and opinion that [Michael] was not delusional, nor paranoid." For these reasons, Michael asked the circuit court to reconsider its final placement order and instead "equalize placement in keeping with the intention of preserving public school socializing but avoid unnecessarily excluding a loving father."

¶29    On October 28, 2022, the circuit court denied Michael's motion for reconsideration without holding a hearing. The court explained that Michael had not offered any legal authority to support his motion for reconsideration but, instead, "only argue[d] why the court should have made a different decision." The court explained that a request for reconsideration "is not proper simply because a party disagrees with the court's ruling," nor can a motion for reconsideration "be based on a recitation of arguments already made or by making arguments that could have been made at the time of the hearing but were not."

¶30 The circuit court further rejected Michael's assertion that he "was surprised and prejudiced because [Megan] was seeking sole legal custody and primary placement," explaining that "[a]t a minimum it was discussed on the record at the hearing when the contested matter was scheduled." Finally, the court rejected Michael's argument that he "was 'surprised at trial not to have the opportunity to call Dr. Holmgren,' [because Michael] never called Dr. Holmgren as a witness." Instead, Michael "simply wished to read from a report authored by Dr. Holmgren without arranging for his appearance as a witness," which did not comport with the rules of evidence.

¶31 On appeal, Michael again argues that Megan's decision to contest shared placement and enrollment at an elementary school in River Falls came as a surprise to him. However, as the circuit court pointed out in denying Michael's motion for reconsideration, Megan clearly stated that she intended to contest these issues during the status conference on August 24, 2022.

¶32 We agree with the circuit court that Megan's intentions were clear. Specifically, at the August 24 status conference, the court asked whether the parties had reached "a stipulation to the issues of custody and placement … that would change the divorce order from … November." Megan's attorney responded, "From our perspective, no," explaining that Michael had not followed through with the parties' tentative agreement and was now proposing a school enrollment that Megan did not agree with. The court responded that it would schedule a contested hearing on the issues of custody and placement because "the parties likely no longer have agreements." Michael's attorney asked, "Are they contesting everything today?" Megan's attorney responded, "[I]t's contested and your motion is contested."

¶33    Michael also argues that the circuit court's determinations violate his fundamental rights as a parent. Michael's constitutional arguments ignore the fact that Megan has the same fundamental parenting rights, but the parties were unable to agree on how to exercise those rights. The parties' disagreement over their minor child's custody and placement "demonstrates the very need for state intervention." *See Lofthus v. Lofthus*, 2004 WI App 65, ¶12, 270 Wis. 2d 515, 678 N.W.2d 393. Thus, in a divorce, "Wisconsin has given its courts the *responsibility* to arbitrate disputes … and arrive at a solution which, in the court's exercise of discretion, is in the child[]'s best interests." *Arnold v. Arnold*, 2004 WI App 62, ¶12, 270 Wis. 2d 705, 679 N.W.2d 296. Because the parties were unable to agree on issues relating to custody and placement in the present case, the circuit court was required to exercise its responsibility to arbitrate their dispute by determining the best interests of the child using the factors set forth in WIS. STAT. § 767.41.

¶34    Michael challenges the legislature's decision to adopt several of these statutory factors, arguing that Wisconsin's statutory scheme for resolving placement issues "allows courts too much power in determining placement and takes parents['] control and rights away." We have repeatedly rejected similar challenges to contested placement decisions. *See Arnold*, 270 Wis. 2d 705, ¶9 ("A statute is presumed to be constitutional and …. [t]he burden of establishing the unconstitutionality of a statute is on the person attacking it, who must overcome the strong presumption in favor of its validity." (citation omitted)); *Lofthus*, 270 Wis. 2d 515, ¶8 ("Statutes are presumed constitutional, and we will sustain a statute as constitutional if there is any reasonable basis for the legislature's choice to enact it.").

¶35    Here, Michael rehashes the constitutional arguments made by the appellants in *Arnold* and *Lofthus*, but he does not explain why we should consider yet another constitutional challenge to Wisconsin's statutory placement scheme.[4] An appellate court cannot "step out of our neutral role to develop or construct arguments for parties; it is up to them to make their case." *SEIU, Loc. 1 v. Vos*, 2020 WI 67, ¶24, 393 Wis. 2d 38, 946 N.W.2d 35. When a party "fail[s] to do so, we may decline to entertain those issues." *Id.* We therefore decline to entertain Michael's challenge to the placement factors set forth in WIS. STAT. § 767.41.

¶36    Michael also disagrees with the circuit court's determination that these statutory factors favored giving Megan primary placement during the school year. The circuit "court has wide discretion in making physical placement determinations." *Wiederholt v. Fischer*, 169 Wis. 2d 524, 530, 485 N.W.2d 442 (Ct. App. 1992). "We must sustain the decision if the court exercised its discretion on the basis of facts of record, employed a logical rationale and committed no error of law." *Licary v. Licary*, 168 Wis. 2d 686, 692, 484 N.W.2d 371 (Ct. App. 1992) (citation omitted).

¶37    The record indicates that the circuit court applied the factors in WIS. STAT. § 767.41 to the facts of record as set forth in the contested hearings on September 15 and 23, 2022. During these hearings, the court took testimony from both parents and also considered the recommendation of the GAL. The court

---

[4] Michael does not mention *Arnold v. Arnold*, 2004 WI App 62, 270 Wis. 2d 705, 679 N.W.2d 296, or *Lofthus v. Lofthus*, 2004 WI App 65, 270 Wis. 2d 515, 678 N.W.2d 393, in his opening brief. Michael's reply brief does not contain a table of authorities, but as best we can tell, Michael discusses only *Lofthus*, stating that he "disagrees" with this decision as showing "clear bias." We reject Michael's argument because, as explained earlier, only our supreme court has the power to overrule or modify our prior published decisions. *See Cook v. Cook*, 208 Wis. 2d 166, 189-90, 560 N.W.2d 246 (1997).

decided to give Megan primary placement during the school year due to "the concerns raised about … mental health," as well as Michael's "historical refusal … to abide by orders and stipulations to bring the child to school." The court also expressed concern, "given the history in this case, that should [Michael] have significant placement during the school year, that there would be a lot of absences during his placement days" and further noted other school readiness issues such as "the lack of a formal bedtime" on Michael's placement days and problems with the child's hygiene during Michael's placement. These reasons all "weigh[ed] into the [c]ourt's determination that ultimately it's in [the child's] best interest to be primarily with [Megan] during the school week, and so during the school year." The court's decision reflects a logical rationale.

¶38    In this appeal, Michael rehashes the arguments that he made during the contested hearing and in his motion for reconsideration. Specifically, he argues that the circuit court misinterpreted certain evidence and did not give sufficient weight to his relationship with the minor child. Because the court evaluated the statutory factors using facts in the record and gave a logical rationale for its decision, we conclude that it did not erroneously exercise its discretion. *See Licary*, 168 Wis. 2d at 692.

¶39    Michael also argues that the circuit court failed to consider the report from Dr. Holmgren regarding his mental health. In making its placement determination, the court specifically noted that there was no testimony or evidence from any psychiatrist or psychologist. The problem for Michael is that he merely e-filed the report but never introduced the report into evidence. When Michael sought to question Megan regarding this report during the contested hearing, the court sustained a hearsay objection. In his reply brief, Michael argues, in conclusory fashion, that it "is not entirely accurate" that the report from

Dr. Holmgren was not "presented as evidence." However, he does not provide any citations to the record or to any authority governing this evidentiary issue. We therefore reject this argument as inadequately briefed. *See* ***State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (explaining that an appellate courts "may decline to review issues inadequately briefed" as well as "[a]rguments unsupported by references to legal authority").

## IV. Violation of Constitutional Rights

¶40     Michael contends that various aspects of the divorce proceedings violated his constitutional rights, arguing that "[t]he [c]ourt process abused [his] 14th Amendment rights." To the extent that Michael is raising a due process claim, due process requires timely notice and the opportunity to be heard and to present evidence. *See* ***Riemer v. Riemer***, 85 Wis. 2d 375, 377, 270 N.W.2d 93 (Ct. App. 1978). The only developed argument we see from Michael in this regard is that he "was surprised" when Megan refused to agree to homeschooling and further surprised when Megan refused to agree to the GAL's pretrial recommendation of shared placement with the child attending school in River Falls instead of Hudson.[5] Because Michael believed the parties had an agreement, he argues that he was not adequately prepared for the contested hearings on September 15 and 23, 2022.

---

[5] Michael incorrectly characterizes this failure to follow through with the GAL's initial recommendation as "a breach of contract." Our supreme court has explained that "[a] stipulation … does not rise to the dignity of a contract." ***Van Boxtel v. Van Boxtel***, 2001 WI 40, ¶26, 242 Wis. 2d 474, 625 N.W.2d 284 (citation omitted). Instead, "a stipulation is no more than an understanding of what the parties desire and recommend to the court." ***Id.*** Moreover, "[a] party is free to withdraw from this recommendation until it is incorporated into the divorce judgment." ***Id.***

¶41    This argument goes nowhere, for two reasons.  First, as Megan points out, Wisconsin law is clear that stipulations require court approval.  *See* ***Hottenroth v. Hetsko***, 2006 WI App 249, ¶25, 298 Wis. 2d 200, 727 N.W.2d 38.  In ***Hottenroth***, we explained that because a stipulation is "only a recommendation, the court need not accept it, but instead has a duty to decide whether that recommendation is a fair and reasonable resolution of the issues and, thus, a recommendation the court wants to adopt."  ***Id.***  This "decision whether to approve or reject a stipulation is within the circuit court's discretion."  ***Id.***  Our supreme court has explained that the circuit court's "discretionary determination will be upheld in the absence of an error in law or the failure of the court to base its decision upon facts in the record."  ***Van Boxtel v. Van Boxtel***, 2001 WI 40, ¶25, 242 Wis. 2d 474, 625 N.W.2d 284.  Thus, even if Michael correctly believed that the parties had a verbal agreement, the circuit court could have rejected the parties' stipulation if the record did not adequately support the terms of that agreement.  In other words, Michael still needed to present evidence to support the terms of the stipulation during the contested hearings in September.

¶42    Second, Michael does not point us to any place in the record where he objected to proceeding with the contested hearings in September, nor do we see any such objection.  To the contrary, at the conclusion of the September 15, 2022, hearing, the circuit court asked whether there was "anything you want to put on the record either about our discussions or generally before we conclude for today?"  Michael's attorney responded, "No."  We therefore conclude that Michael has forfeited any argument that he was not adequately prepared for the hearing.  *See* ***Allen v. Allen***, 78 Wis. 2d 263, 270-71, 254 N.W.2d 244 (1977) (declining to consider an argument on appeal where the appellant failed to make a timely objection).

¶43 Michael further argues that the divorce process was "over[ly] invasive" and that the GAL "put an extreme amount of pressure on [him by] asking for 5 references, medical records, and a home visit." Michael appears to be suggesting that the GAL's requests for information amounted to a violation of his constitutional rights. The circuit court must appoint a GAL whenever "the legal custody or physical placement of [a] child is contested." WIS. STAT. § 767.407(1)(a)2. The GAL's statutory responsibility is to serve as "an advocate for the best interests of [the] minor child." Sec. 767.407(4).

¶44 We see no developed argument from Michael that the GAL in the present case exceeded his statutory authority. Moreover, Michael does not provide citations to the record showing that he objected to the GAL's exercise of this authority. On the contrary, Michael reported to the circuit court that he "decided to cooperate" with the GAL's requests "since Megan did also." Because the court record reflects a voluntary decision to cooperate with the GAL, we conclude that Michael has forfeited any argument regarding the GAL's exercise of statutory authority. *See State Farm Mut. Auto. Ins. Co. v. Hunt*, 2014 WI App 115, ¶32, 358 Wis. 2d 379, 856 N.W.2d 633 ("Arguments raised for the first time on appeal are generally deemed forfeited.").

## V. Child Support and Attorney Fees

¶45 In addition to appealing the placement order, Michael filed a notice of appeal regarding the circuit court's order requiring him to pay Megan child support, as well as a portion of Megan's attorney fees. At the hearing on November 22, 2022, Megan sought child support from Michael as well as a contribution toward her attorney fees. Michael contested child support and also sought a quitclaim deed from Megan regarding any claim she might have on

marital real property. On November 30, 2022, the parties filed written closing arguments regarding these issues.

¶46 On January 5, 2023, the circuit court entered its order regarding property division and child support. The court's order included a requirement that Megan execute a quitclaim deed for Michael's real property. Regarding child support, the court determined that Michael had overcounted his annual number of overnight placements and that the actual total was 102. The court further determined that Michael's "decision to forgo income at this time is voluntary and unreasonable." Based on the fact that Michael had received a job offer from Amazon that paid $20 per hour, the court imputed monthly income of $3,466.67, which it added to the $850 per month that Michael received for subleasing dealer space at an antique shop, for a total of $4,316.67. Using the shared placement calculation for child support, the court ordered Michael to pay Megan $466 per month in child support, with an effective date of October 1, 2022. The court ordered Michael to pay past due child support of $1,398 at a rate of $100 per month.

¶47 Regarding Megan's request that Michael contribute toward her legal fees, the circuit court rejected Megan's proposal that Michael would pay $10,000 of her fees totaling $16,000. The court explained that a significant reason for the extensive litigation was because the divorce was contested, in part because Megan withdrew her consent to a stipulation. However, the court acknowledged that Michael had increased litigation costs by failing to cooperate with discovery and making "several repetitive and frivolous filings." Thus, the court ordered Michael to pay $2,500 toward Megan's legal fees.

19

¶48    In his opening brief, Michael states that he is appealing the award of child support and attorney fees.  However, we see no developed argument from Michael that the circuit court erred when calculating either award.  Michael has therefore abandoned these issues.  *See State v. Ledger*, 175 Wis. 2d 116, 135, 499 N.W.2d 198 (Ct. App. 1993) ("On appeal, issues raised but not briefed or argued are deemed abandoned.").

¶49    Michael also argues that Megan should reimburse him for various costs incurred during litigation, including medical expenses and legal fees.  Michael does not provide any citations to the record showing that he requested these expenses from Megan, nor do we see any indication that he made these requests during the contested hearing or in his written closing argument.  We therefore conclude that Michael has forfeited any argument that he is entitled to reimbursement from Megan.  *See Hunt*, 358 Wis. 2d 379, ¶32.

## VI.  Bias

¶50    Michael argues that the circuit court's decisions demonstrate gender bias.  Michael points generally to the reasoning in the court's January 5, 2023 order regarding financial issues and further argues that evidence of bias is "clear from the Judge's language and opinion from the transcripts."

¶51    However, Michael does not support this argument with specific citations to the record.  "[W]e have said many times that we will not consider arguments unsupported by citations to the record, for it is not our duty to 'sift and glean the record' to find facts to support a party's argument."  *State v. Boshcka*, 178 Wis. 2d 628, 637, 496 N.W.2d 627 (Ct. App. 1992) (citation omitted).  We therefore reject this argument.

## VII. COVID

¶52    Michael further contends that the entire divorce process was "skewed" due to COVID.  More specifically, Michael alleges that "The accusation of being recluse, working status, not responding were products of COVID.… They were instead used to unfairly skew me; tied into my mental health."  While we are sympathetic to the impact of the pandemic on Michael's well-being, we note that nothing transpired in this case during 2020, nor were there any significant developments in the case until the second half of 2021.  Michael does not point to anything in the record to suggest that COVID materially affected these proceedings.

¶53    Instead, the record reflects that Michael made several conscious choices regarding the issues that he now identifies as being affected by COVID.  For example, regarding Michael's failure to comply with discovery requests, Michael wrote a letter to the circuit court in which he did not mention COVID but instead questioned the need for compliance.  The court referred Michael to a free legal clinic, but Michael stated that he did not have time to attend.

¶54    Regarding Michael's mental health, Michael testified at the September 15, 2022 hearing that he had continued in counseling "as long as was necessary" and had been discharged.  Again, there was no mention of COVID in Michael's testimony regarding his decisions about mental health treatment.  Regarding his employment status, Michael testified on September 15 that he had no aversion to working and was planning to start work at Amazon.  At the hearing on November 8, 2022, however, Michael testified that he had subsequently declined the Amazon job due to a potential conflict with a patent that Michael

held. Thus, Michael's own prior statements and testimony contradict his current claim that COVID was to blame for these issues.

## CONCLUSION

¶55 We see no developed arguments from Michael that would undermine the circuit court's determinations regarding placement, child support, and attorney fees. We therefore affirm the court's orders.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.